**WECKLER v. VALLEY CITY
MILL. CO. et al.**

**No. 1393.**

United States District Court
W. D. Michigan, S. D.

Sept. 30, 1950.

(herein referred to as the "old company") was a Michigan corporation which also had its principal office and place of business at Portland, Michigan. The individual defendants, Fred N. Rowe, Sr., Fred N. Rowe, Jr., Robert L. Davis, and Martin Vermaire, all citizens of Michigan, were directors of the old company and are also directors of the new company.

Plaintiff sues to recover the par value of 250 shares of the 7% cumulative preferred stock of the Valley City Milling Company (old company) and accrued and unpaid dividends thereon, plus interest. The material facts in this case have been stipulated or are shown by exhibits or admitted in the pleadings. Defendant Martin Vermaire, the secretary of both the old and the new companies, was the only witness called. However, a proper understanding of the questions presented requires that the facts be set forth in detail.

The old company was organized, under Act No. 232, Pub. Acts Mich. 1885, for a term of 30 years from September 4, 1894, and on October 29, 1919, its corporate existence was extended for a further term of 30 years from September 4, 1920. Plaintiff is the holder and owner of 250 shares of the par value of $10 each, of the 7% cumulative preferred capital stock of the old company, represented by stock certificate number 732 issued to her on April 20, 1923. At the time this suit was begun, the only other outstanding 7% cumulative preferred stock of the old company was 350 shares owned by plaintiff's mother and 250 shares owned by her brother. The stock certificate issued to plaintiff states on its face as follows: "The holder of this certificate is entitled to a fixed dividend at the rate of Seven Per Cent. (7%) per annum, payable quarterly on the first days of January, April, July and October of each year, *which shall be cumulative* and payable before any dividend is set apart or paid on the common stock. Beginning with the twelve months' period ending June 30, 1922, and annually thereafter, the Company shall set apart not less than Twenty Per Cent. (20%) of its annual net earnings, after payment of preferred stock dividends, as a sinking fund, which shall be used to redeem or retire preferred

Harrington, Waer, Cary & Servaas and Oscar E. Waer, all of Grand Rapids, Mich., for plaintiff.

Warner, Norcross & Judd and David A. Warner and Conrad E. Thornquist all of Grand Rapids, Mich., for defendants.

STARR, District Judge.

Plaintiff is a citizen of Virginia. Defendant Valley City Milling Company, a presently existing corporation (herein referred to as the "new company") is a Michigan corporation with its principal office and place of business at Portland, Michigan. Defendant Valley City Milling Company

stock in accordance with the by-laws of the Company. Upon dissolution or liquidation the holders of preferred stock shall be entitled to be repaid in full the par amount of their stock with accrued dividends before any distribution shall be made to the holders of the common stock. This preferred stock may be called for redemption in whole or in part on any dividend payment date at the option of the corporation on payment of .One Hundred Two Per Cent. (102%) of its par value plus accrued dividends to the date of redemption. *This stock is subject to redemption and shall be redeemed by the corporation at par and accrued dividends on October 1, 1949, if this stock is then outstanding.*"

The shares of preferred stock owned by plaintiff were issued pursuant to an amendment of the articles of incorporation of the old company, adopted at a meeting held October 29, 1919, which amendment provided in part as follows: "The capital stock of the corporation hereby organized is the sum of One Million Dollars ($1,000,000), of which Five Hundred Thousand [Dollars] ($500,000), shall be common stock, and Five Hundred Thousand Dollars ($500,000), shall be preferred stock. *The preferred stock shall be subject to redemption and shall be redeemed at par on the First day of October, 1949,* and the holders shall be entitled to a dividend of Seven Per Cent. (7%) per annum, payable quarterly *which shall be cumulative* and payable before any dividends shall be set apart or paid on the common stock."

At this same meeting article VIII of the by-laws of the old company was amended to read identically with the above-quoted amendment of its articles of incorporation. The certificate for the 250 shares of preferred stock in question was issued to plaintiff pursuant to the provisions of § 35 of Act No. 232, Pub.Acts Mich.1903, as amended by Act No. 254, Pub.Acts 1917, which section as thus amended provided as follows: "Any such company shall have power to create and issue certificates for two kinds of stock, viz: General or common stock, and preferred stock, which preferred stock shall at no time exceed two-thirds of the actual capital paid in, and shall be redeemed by the corporation at par at a certain time to be fixed in the articles of association and to be expressed in the certificates therefor. * * * If for any reason said corporation shall cease business or become insolvent then, after the payment of all liabilities and debts, the remainder of the assets of said corporation shall be applied first in payment in full of all preferred stock and the unpaid dividends due thereon, and the balance divided pro rata, share and share alike, among the holders of the common stock."

On December 22, 1936, the holders of a majority of each class of shares entitled to vote, and a majority of each class of shares whose rights, privileges, and preferences were to be changed (pursuant to § 43 as amended of the Michigan General Corporation Act [1]) voted to amend the articles of incorporation of the old company so as to make the then-outstanding preferred stock, including that owned by plaintiff, noncumulative as to future dividends and so as to cancel the then-accrued and unpaid dividends thereon by issuing to preferred stockholders, in lieu of such accrued and unpaid dividends, one share of new $1-par-value common stock for each share of preferred stock held by them. The certificate of amendment of the articles of incorporation, executed and filed by the old company in pursuance of this December 22, 1936, resolution, provided in part as follows:

"Be and it Hereby is Resolved that the rights, privileges or preferences of the preferred stock of the par value of Ten Dollars ($10) per share of this corporation be changed *so as to eliminate therefrom the cumulative dividend requirement;* that the common stock of the par value of Ten Dollars ($10) per share be changed to common stock of the par value of One Dollar ($1) per share, *and that the accumulated dividends on the preferred stock of the par value of Ten Dollars ($10) per share of this corporation be funded by the issuance of a share of common stock of the par value of One Dollar ($1) per share for each share of*

1. Act No. 327, Pub.Acts 1931, as amended, Comp.Laws 1948, § 450.1 et seq., Stat.Ann. § 21.1 et seq.

*preferred stock presently outstanding,* and that the articles of incorporation of the corporation relating to its capital stock * * * be and the same are hereby a-mended so as to read as follows. * * *

" '*Dividends upon the preferred stock shall be noncumulative,* whether or not in any fiscal year there shall be net income or surplus available for the payment of divi-dends in such fiscal year, so that if in any fiscal year or years, dividends in whole or in part are not paid upon the preferred stock, *unpaid dividends shall not accumu-late* as against the holders of the common stock, so that no sums in any later years shall be paid to the holders of the preferred stock with respect to any prior year or years when dividends were not paid, and so that in no event shall the holders of the prefer-red stock receive dividends of more than Seven Percent (7%) in any fiscal year. * * *

" 'The preferred stock *shall be redeemed on October 1, 1949,* by payment in cash for each share of preferred stock the sum of Ten Dollars ($10) per share.' "

Prior to the above-mentioned amendment of its articles of incorporation on December 22, 1936, the old company had outstanding 21,500 shares of common stock and 19,900 shares of preferred stock of the same issue held by plaintiff. Subsequent to the amend-ment, and after most of the preferred stock-holders had exchanged their old shares of cumulative preferred stock for the new shares of noncumulative preferred, there were outstanding 16,256 shares of the new $10-par-value noncumulative preferred and 39,269 shares of $1-par-value common stock. There were also outstanding the 250 shares of the old 7% cumulative preferred stock issued to plaintiff April 20, 1923, and the 600 shares owned by her mother and brother. Plaintiff did not attend the De-cember 22, 1936, meeting of stockholders either in person or by proxy although notice of the meeting was sent to her.

Subsequent to the issuance of its new noncumulative stock in 1936 the old com-pany set aside sufficient shares of that stock to provide for the exchange of the old cu-mulative preferred held by plaintiff and her relatives, and as dividends were declared on the new preferred, the company set aside amounts sufficient to pay such dividends in the event plaintiff and her relatives ever exchanged their old preferred for the new preferred. As hereinbefore mentioned, the certificate of cumulative preferred stock held by plaintiff required the payment of dividends at the rate of 7% per annum, payable quarterly, but the only dividends paid thereon since October 1, 1923, were the instalments for two quarters in 1927 and three quarters in 1928, amounting in the aggregate to $218.25.

On January 17, 1949, defendant Fred N. Rowe, president of the old company, sent a letter to all stockholders accompanied by a formal notice of a special meeting of stock-holders to be held at the office of the com-pany in Portland, Michigan, on February 7, 1949. This letter stated in part as fol-lows:

"Enclosed herewith you will find a formal notice of the special meeting of the stock-holders which is called by order of the board of directors, for the purpose of tak-ing proper corporate action to continue the business. Our present charter will expire on September 4, 1950, and our present out-standing preferred stock is redeemable October 1, 1949.

"After consideration of the situation by your board of directors and consultation with legal counsel it appears that there may be advantages in affecting our purpose through the transfer of the business and as-sets of the company to a new corporation organized for the purpose of acquiring the business. The notice provides either for that method or in the alternative for the extension of the charter and the preferred stock. The same results from a practical standpoint would be obtained by either method, although the former probably is preferable for legal reasons.

"Your directors are distinctly of the opin-ion that the business should be continued. * * *

"We trust we may have your continued confidence and cooperation and will appre-ciate your signing and returning promptly the enclosed proxy. * * *

"We are pleased to enclose a dividend check in accordance with action of the board of directors, on preferred stock (the new noncumulative) of the Valley City Milling Company *issued on and after Feb. 9, 1937,* to stockholders of record December 31, 1948, for the quarter ending December 31, 1948."

The formal notice accompanying this letter stated that the purpose of the special meeting was:

"(1) To consider and take action upon a proposal, approved by the board of directors subject to approval of shareholders, to sell all of the assets and properties of the company to Rowena Mills, Inc., for the following consideration: (a) The assumption by Rowena Mills, Inc., of all of the liabilities of the company *(other than capital stock liabilities)* existing as of the date of the transfer and conveyance of such assets to it; (b) delivery to this company of 14,600 fully paid and nonassessable shares of Rowena Mills, Inc., 6% cumulative sinking fund preferred stock, $10 par value, and 34,378 fully paid and nonassessable shares of Rowena Mills, Inc., common stock, $1 par value.

"(2) Authorizing the dissolution of this company and winding up its affairs in the event the sale of all the company's property and assets is approved.

"(3) As an alternative to the foregoing, to consider and take action upon the renewal or extension of the company's corporate charter for a further term of thirty (30) years, and *extending the redemption date of its outstanding preferred stock.*

"(4) To take such action in connection with or for the purpose of effectuating any or all of the foregoing purposes as may be deemed advisable, and to transact any and all other business that may properly come before the meeting."

Plaintiff did not attend or in any way participate in this special meeting of the stockholders of the old company, and several days prior to the meeting she caused the following letter to be sent to the company by her attorney:

"I am writing this letter on behalf of Mrs. Alice I. Haines, Mrs. Nannie B. Weckler and Mr. Vincent Bunker (plaintiff and her mother and brother), who have received notice of a stockholders' meeting to be held on February 7th.

"My clients own 850 shares of cumulative preferred stock issued by your company on December 27, 1919, redeemable at par and accrued dividends on October 1, 1949.

"According to the best information available to me at the present time, there appears to be accumulated dividends of 170% that will be due and payable on October 1, 1949, so that the total amount that will then be due on my clients' stock holdings is $22,950. If your records show that I am wrong in my computation, I shall be glad to be corrected.

"This letter is sent to you as a matter of record only in order that you may be aware of the situation at the time of the forthcoming stockholders' meeting."

The action proposed in paragraph one of the above notice was approved by a majority of the outstanding stock at the special meeting of stockholders on February 7, 1949. The minutes of this special meeting, copy of which is attached hereto marked "Appendix A," clearly show defendants' planned attempt to materially change the rights of all holders of preferred stock of the old company, particularly the rights of plaintiff. In brief, the plan of reorganization initiated by the members of the board of directors of the old company, and authorized at this special meeting of stockholders, provided for the organization of a new corporation known as Rowena Mills, Inc.; the sale and transfer of all assets of the old company to Rowena Mills, Inc.; the assumption by Rowena Mills, Inc., of all liabilities of the old company *except capital-stock liabilities;* the issuance and delivery to the old company in payment for its assets, of 14,600 shares of the preferred stock *redeemable October 1, 1969,* and 34,378 shares of the common stock of $1 par value per share of Rowena Mills, Inc.; the exchange by the old company of such preferred and common stock of Rowena Mills, Inc., for the then-outstanding preferred and common stock of the old company on a share-for-share basis; the dissolution of the old company; and the immediate amendment of the articles of incorporation of Rowena Mills, Inc.,

so as to change its name to Valley City Milling Company (the new company).

After the February 7, 1949, meeting the directors of the old company proceeded to carry out the reorganization plan, whereby all of its assets were conveyed to Rowena Mills, Inc. The old company was then dissolved, and the articles of incorporation of Rowena Mills, Inc., were immediately amended so as to change its name to Valley City Milling Company (the new company). On April 22, 1949, the following letter was sent to all stockholders:

"On February 7, 1949, the shareholders of Valley City Milling Company approved the sale of all the property and assets of this corporation to Rowena Mills, Inc., of Portland, Michigan. On February 28, 1949, a transfer of the assets was effected, and the consideration therefor delivered in accordance with the purchase agreement dated January 13, 1949.

"In accordance with the action of the shareholders of Valley City Milling Company that corporation is now in the process of being dissolved, and by action of the shareholders of Rowena Mills, Inc., on February 7, 1949, the name of Rowena Mills, Inc., has been changed to Valley City Milling Company.

"Accordingly, the holders of the preferred stock and the holders of the common stock of Valley City Milling Company are now entitled to exchange the shares of common stock and preferred stock of Valley City Milling Company for an equal amount of the common and preferred stock of Rowena Mills, Inc. (now Valley City Milling Company). Enclosed you will find a letter of transmittal to be forwarded with the certificates for the shares of preferred and common stock of Valley City Milling Company to the undersigned.

"You are requested to forward your certificates to Valley City Milling Company, Portland, Michigan, so that the exchange of common and preferred stock of Rowena Mills, Inc. (now Valley City Milling Company) may be completed promptly."

On June 30, 1949, after the reorganization outlined above, the new company had outstanding 14,470 shares of 6% preferred stock redeemable October 1, 1969, and 34,328 shares of $1-par-value common stock. There were also outstanding at that time the 250 shares of the original 7% cumulative preferred stock of the old company held by plaintiff and the 600 shares held by her mother and brother. Before beginning the present suit plaintiff demanded payment of the par value of her 250 shares of preferred, and accrued dividends thereon, which demand was refused by defendants.

It appears that no dividends were paid on the common stock of either the old company or the new company during the period from October 1, 1923, to November 2, 1949. Subsequent to October 1, 1923, the old company paid dividends amountiing to a total of $18,646.35 on its 7% cumulative preferred stock issued prior to October 1, 1923, viz., quarterly instalments of 1¾% on July 9, and August 1, 1927, and 1¾% on January 3, April 2, and July 2, 1928. Plaintiff received these dividends on her stock, which, as hereinbefore mentioned, totaled $218.25. From 1936 to November 2, 1949, dividends amounting to $2.45 per share were paid on the noncumulative preferred stock of the old company issued in pursuance of the action taken and the amendment of its articles of incorporation on December 22, 1936. Subsequent to December 22, 1936, the old company expended $14,775.50 in the purchase and retirement of 1,575 shares of its outstanding 7% cumulative preferred stock issued prior to October 1, 1923, and subsequent to January 1, 1936, the old company purchased and retired 5,320½ shares of its outstanding common stock, paying therefor $4,161.53. No rights of creditors of the defendant companies are involved herein, as defendants concede that in February, 1949, and at the present time the assets of the defendant companies were, and are, ample to meet all obligations, including the obligation to plaintiff.

The material facts in this case are not in dispute. The questions of law presented for determination are—what effect, if any, did the corporate action of the defendant companies in 1936 and 1949, as outlined above, have upon plaintiff's rights as

a preferred stockholder? As hereinbefore stated, plaintiff's stock certificate issued April 20, 1923, for 250 shares of the 7% cumulative preferred stock of the old company, provided in part: "The holder of this certificate is entitled to a fixed dividend at the rate of Seven Per Cent. (7%) per annum, payable quarterly, * * * which shall be cumulative. * * * This stock is subject to redemption and shall be redeemed by the corporation at par and accrued dividends on October 1, 1949." Likewise, the amended articles of incorporation and by-laws of the old company, in pursuance of which plaintiff's stock was issued, provided in part: "The preferred stock shall be subject to redemption and *shall be redeemed at par on the First day of October, 1949,* and the holders shall be entitled to a dividend of 7% per annum, payable quarterly, *which shall be cumulative."* These provisions clearly imposed upon the old company the contractual obligation to redeem plaintiff's preferred stock and pay her the par value thereof, plus accrued dividends on October 1, 1949. Plaintiff contends that the old company could not, and did not, escape this obligation to her by the amendment of its articles of incorporation in 1936 or by the purported sale of its assets to the new company in 1949. Defendants, on the other hand, contend that the corporate action taken by the old company in those years was proper and valid under the applicable Michigan statutes and legally cut off plaintiff's right to redemption of her preferred stock with accrued dividends on October 1, 1949. The rights and liabilities of the parties must be determined under the law of the State of Michigan.

The court will first consider the amendment of the articles of incorporation of the old company on December 22, 1936. It is conceded that the intended purpose of this amendment was to create a new issue of noncumulative preferred stock and substitute or exchange that for the then-outstanding 7% cumulative preferred of the old company, which included the preferred stock owned by plaintiff, and to·cancel the then-accrued and unpaid dividends on the outstanding cumulative preferred stock[2] by issuing to preferred stockholders, in lieu of such accrued and unpaid dividends one share of new $1-par-value common stock for each share of preferred held by them. This corporate action was taken pursuant to § 43 of the Michigan General Corporation Act[3] Comp.Laws 1948, § 450.-43, Stat.Ann. § 21.43, which provides: "Any corporation formed or existing under this act may at a meeting of the shareholders duly called and held amend its articles to increase or to decrease its authorized capital stock and otherwise to amend its articles without limitation so long as the articles as amended would have been authorized by this act as original articles, by the vote of the holders of the majority of its shares entitled to vote: Provided, That if any such amendment shall change the rights, privileges or preferences of the holders of shares of any class, such amendment shall be approved by the vote of the holders of a majority of the shares of each class of shares entitled to vote and a majority of shares of each class whose rights, privileges or preferences are so changed."

The old company apparently adhered to the procedural requirements of § 43 in effecting the amendment of its articles of in-

2. The only dividends paid by the old company after October 1, 1923, on its preferred stock issued prior to that date were as follows: 1¾% July 9, 1927; 1¾% August 1, 1927; 1¾% January 3, 1928; 1¾% April 2, 1928; 1¾% July 2, 1928; total 8¾%.

3. Section 189 of the General Corporation Act, Comp.Laws 1948, § 450.189, Stat. Ann. § 21.190, which makes the act applicable to the transactions here in question, provides:

"Every corporation heretofore organized and incorporated under any law of this state, which if now incorporated would be required to incorporate under and subject to this act, shall hereafter be subject to the provisions of this act without formal reorganization hereunder and such corporations shall be deemed to exist under this act, and, except where otherwise provided in the act under which any such particular corporation is incorporated, if such act has not been repealed, the provisions of this act shall govern all corporations heretofore or hereafter incorporated in this state."

corporation. However, it should be kept in mind that the plaintiff did not attend the stockholders' meeting on December 22, 1936, ·at which the proposed amendment of the articles was authorized, never consented to the amendment, and never surrendered her cumulative preferred stock in exchange for new noncumulative preferred.

Whatever the law of other jurisdictions may be as to the power of majority stockholders to materially change the contract rights of minority stockholders, the law of Michigan is well established that a Michigan corporation may not, through action by a majority of its stockholders, take away from its minority stockholders vested or accruing property rights without the consent of the minority. Sutton v. Globe Knitting Works, 276 Mich. 200, 267 N.W. 815, 105 A.L.R. 1447; Vanden Bosch v. Michigan Trust Co., 6 Cir., 35 F.2d 643. Section 43 of the Michigan General Corporation Act, quoted above, which permits a corporation to amend its articles so as to change the rights, privileges or preferences of the holders of shares of any class of stock, if the amendment is approved by the vote of the holders of a majority of the shares of each class entitled to vote and a majority of shares of each class whose rights, privileges, or preferences are so changed, must be read and construed in connection with §§ 59 and 192 of the Act. Sutton v. Globe Knitting Works, supra, 276 Mich. 200, 267 N.W. 815, 105 A.L.R. 1447; City of Grand Rapids v. Crocker, 219 Mich. 178, 189 N.W. 221. Section 59, Comp.Laws 1948, § 450.59, Stat.Ann. § 21.59, provides: *"The liability of any corporation* or of the shareholders or officers thereof, or the rights or remedies of the creditors thereof, or of persons doing or transacting business with such corporation, *shall not in any way be lessened or impaired* by the sale of any of the assets thereof, or by the increase or decrease in the capital stock of any such corporation, or by the consolidation or merger of 2 or more corporations *or by any change or amendment in the articles of any such corporations."*

Section 192, Comp.Laws 1948, § 450.192, Stat.Ann. § 21.193, provides: "This act shall not impair or affect any act done, offense committed or right accruing, accrued, or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act had not been passed."

These provisions of the Michigan General Corporation Act were considered by the Supreme Court of Michigan in Sutton v. Globe Knitting Works, supra, 276 Mich. 200, 267 N.W. 815, 105 A.L.R. 1447. In that case the plaintiff tendered his shares of preferred stock for redemption on the specified redemption date and demanded payment of the par value thereof. The defendant refused to redeem, and the plaintiff sued to recover the amount due him under the terms of the stock certificate, which provided: "This stock is subject to redemption and shall be redeemed at par on January 25, 1932." At the time the plaintiff had acquired his preferred stock, the articles of association of the defendant company contained the following provision: "The preferred stock shall be subject to redemption and shall be redeemed at par on January 25, 1932." The defense was based upon an amendment to the defendant's articles of association, whereby the redemption date of plaintiff's stock had been extended to January 25, 1957. This amendment of the defendant's articles was in pursuance of § 43 of the Michigan General Corporation Act and was made after the plaintiff acquired his preferred stock, but prior to the specified redemption date. In holding that plaintiff was entitled to recover, the court, after quoting §§ 43, 59, and 192 of the General Corporation Act, said, 276 Mich. at pages 206–208, 267 N.W. at page 816:

"In determining whether the Legislature by passing Act No. 327, Pub.Acts 1931 (the Michigan General Corporation Act), intended to empower corporations to alter, in the manner herein asserted by defendant, the rights of those holding corporate stock issued prior thereto, we should read the statute as a whole and make reasonable application of each of its separate sections.

" ' "No rule is better settled than, in construing a statute, effect must be given to

every part of it. One part must not be so construed as to render another part nugatory, or of no effect." * * * People v. Burns, 5 Mich. 114.' City of Grand Rapids v. Crocker, 219 Mich. 178, 189 N.W. 221, 222.

"When read entirely by itself section 43 of Act No. 327 [Pub.Acts 1931] seems to contain provisions which are extremely broad. It is not necessary to decision herein to determine to what extent the rights of minority stockholders are subject to action by majority stockholders in cases where the rights of such minority stockholders were not vested prior to the statute becoming effective. But reading the whole act together and giving effect to each section makes it clear that the legislature had no intention of attempting to give to then-existing corporations the power through action of a majority of its stockholders to take from the minority stockholders vested or accruing property rights. By virtue of the quoted provision contained in the certificate of stock held by plaintiff, he certainly had, immediately upon receiving it from defendant, a vested or accruing right to have it redeemed at par on the 25th day of January, 1932. This was a liability that the corporation assumed incident to issuing this stock. Section 59 of the act expressly provides that 'The liability of any corporation * * * shall not in any way be lessened or impaired by * * * any change or amendment in the articles of any such corporation.' It is not possible to give effect to this provision of the statute and at the same time deny plaintiff the right to recover. Further evidence of the legislative intent in this particular seems quite unnecessary; but apparently so that there might be no doubt of the purpose of the Legislature to preserve vested and accruing rights, practically at the close of the act (which covers more than 50 pages of the Public Acts), in section 192 it is again provided:

" 'This act shall not impair or affect any * * * right accruing, accrued, or acquired, or liability * * * incurred prior to the time this act takes effect, but the same may be * * * enforced * * *

as fully and to the same extent as if this act had not been passed.'

"The inescapable conclusion is that notwithstanding the broad terms in which section 43 of the act is expressed, the Legislature clearly and conclusively intended to preserve vested rights of the character here asserted by plaintiff. This necessarily appears from reading and giving reasonable effect to each and all of the provisions of the enactment."

The Supreme Court further stated, 276 Mich. at pages 209–211, 267 N.W. at page 818:

"It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation. * * * While it is quoted from a case wherein the plaintiff was a creditor of, and not a stockholder in, the defendant corporation, we think the following statement of the United States Supreme Court is applicable to the instant case:

" 'The authority of a state under the so-called reserved power (of the California constitution which provision in effect is the same as that in the Michigan constitution)

is wide; but it is not unlimited. The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation, and stockholders may be changed; but neither vested property rights nor the obligation of contracts of third persons may be destroyed or impaired.' Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 436, 76 L.Ed. 866.

" 'The power of alteration or amendment is not without limit and does not invest the legislature with unrestricted control over the charter of the corporation created by it. * * *

" 'The reserved right of amendment, alteration or repeal, whether contained in a statute or constitutional provision, must be exercised in subjection to the various other constitutional commands and restrictions. Due process of law must be observed, and there must be no denial of the equal protection of the laws, nor impairment of the obligation of contract.' Fletcher's Encyclopedia of Corporations (Rev.Ed.) vol. 7, §§ 3680, 3681."

In Vanden Bosch v. Michigan Trust Co., supra, 35 F.2d 643, the Court of Appeals for the Sixth Circuit, in holding that a Michigan corporation could not amend its articles of incorporation or by-laws so as to extend the redemption date of its outstanding preferred stock, without the stockholders' consent, said at pages 645, 646: "We think this overlooks the true effect of the existing promise to redeem in 1925. This promise was authorized by statute, it was relied upon by the investor, and we see no reason why it is not essentially a contract beyond the power of the corporation to change materially without the consent of the investor. It follows that the statutory provisions for extension and the proceedings here taken must be regarded as subject to the performance of the duty created by this promise. The power of the corporation to amend its articles or its by-laws cannot extend to the making of a change which would amount to a repudiation of a contract which is distinct from, and in addition to, all ordinary matters of internal management, regulation, and control."

The present case, as regards the effect of the amendment of the articles of incorporation of the old company in 1936, falls squarely within the holdings in the Sutton and Vanden Bosch Cases. When the old company issued its certificate to plaintiff April 20, 1923, for 250 shares of its 7% cumulative preferred stock, it thereby contracted to redeem the stock represented by the certificate, with accrued dividends, on October 1, 1949. Under this contract the plaintiff had a vested right to have her stock redeemed, with accrued dividends, on that date. Section 59 of the General Corporation Act hereinbefore quoted expressly provides that the liability of any corporation shall not in any way be lessened or impaired by any change or amendment in its articles of incorporation. Section 192 of the act expressly provides that the act shall not impair or affect any right or liability incurred prior to the time the act took effect, and that any such right or liability may be enforced as fully and to the same extent as if the act had not been passed. When §§ 43, 59, and 192 of the General Corporation Act are considered and construed together, it is clear that the legislature intended that the vested rights of a stockholder, such as are asserted by the plaintiff in the present case, be preserved to the stockholder. The court cannot give effect to these statutory provisions and at the same time deny plaintiff the right to recover on her preferred stock. Plaintiff's right to receive the par value of her preferred stock, together with accrued and unpaid dividends, on October 1, 1949, was a valuable vested property right, and the power of the old company to amend its articles of incorporation did not include the power to repudiate its contractual obligation to plaintiff without her consent. The court concludes that the old company could not, and did not, by the amendment of its articles of incorporation in 1936, change or cut off plaintiff's right to receive accrued and unpaid dividends on her preferred stock on October 1, 1949.

The next question presented is, what effect, if any, did the purported sale of the assets of the old company to the new company in 1949 have on plaintiff's rights as a

preferred stockholder? As hereinbefore stated, the old company on February 7, 1949, pursuant to a so-called reorganization plan formulated by its directors, transferred all of its assets to Rowena Mills, Inc., a new corporation organized by or at the instance of the directors of the old company; and in exchange for its assets the old company received preferred and common stock of the new company. This transfer of assets was immediately followed by a formal dissolution of the old company and a simultaneous change of the name of Rowena Mills, Inc., to Valley City Milling Company (the name of the old company). Preferred and common stockholders of the old company were requested to exchange their shares of stock for stock of the new company on a share-for-share basis. The preferred stock of the new company, which was to be exchanged for preferred stock of the old company, was made redeemable on October 1, 1969, viz., 20 years later than the specified redemption date of the old preferred. This purported sale of assets was made in pursuance of § 57 of the Michigan General Corporation Act, Comp. Laws 1948, § 450.57, Stat.Ann. § 21.57, which provides: "Every corporation formed or existing under this act may sell, lease or exchange all or substantially all of its property and assets, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in, and/or other securities of, any other corporation or corporations, domestic or foreign, as its board of directors shall deem expedient and for the best interests of the corporation, when and as authorized by the affirmative vote of the holders of a majority of the shares issued and outstanding given at a shareholders' meeting duly called for that purpose, or when authorized by the written consent of the holders of a majority of the shares issued and outstanding: Provided, That the articles may require the vote or written consent of the holders of a larger proportion of the shares issued and outstanding."

The purported sale of assets to the new company was approved by the required majority of shares issued and outstanding at the meeting of the stockholders of the old company on February 7, 1949. Prior to the meeting plaintiff's attorney notified the old company that plaintiff and her relatives owned a total of 850 shares of the cumulative preferred stock of the old company redeemable at par with accrued dividends on October 1, 1949. This letter, to which the company did not reply, further stated: "This letter is sent to you as a matter of record only in order that you may be aware of the situation at the time of the forthcoming stockholders' meeting." Plaintiff did not attend this meeting, either in person or by proxy, did not in any way participate in or approve the action taken, and has not exchanged her preferred stock of the old company, redeemable October 1, 1949, for the preferred stock of the new company, redeemable October 1, 1969.

It is clear that the intended purpose of the 1949 reorganization of the old company by the purported sale of its assets to the new company, so far as preferred stockholders were concerned, was to postpone the redemption date of both the old 7% cumulative preferred stock owned by plaintiff and her relatives, and the noncumulative preferred stock authorized in 1936, from October 1, 1949, to October 1, 1969. The right of a Michigan corporation to postpone the redemption rights of its preferred stock was considered and determined in the Sutton and Vanden Bosch cases, supra. In both of these cases it was definitely held that under Michigan law the right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent. However, there is a factual distinction between the present case and the Sutton and Vanden Bosch cases; that is, in those cases the postponement of redemption rights was attempted by an amendment of the articles of incorporation, whereas in the present case the postponement of redemption to 1969 was attempted by a reorganization based on a purported

sale of the assets of the old company to the new company. Defendants contend that the sale of the assets of the old company in 1949 was made in pursuance of § 57 of the Michigan General Corporation Act, which authorizes a corporation to sell all of its assets to another corporation when authorized by vote of the holders of a majority of shares issued and outstanding, and that under § 44 of the act, Comp. Laws 1948, § 450.44, Stat.Ann. § 21.44, a stockholder who objects to a proposed sale of assets is given a single and exclusive remedy; that is, he must vote against the proposed sale, and within 20 days after the sale is authorized he must object thereto in writing and demand from the corporation the payment of the fair cash value of his shares. In other words, defendants claim that because plaintiff has not resorted to the exclusive remedy provided by § 44 of the act, she may not now complain of the sale and the resulting effect upon her rights as a preferred stockholder. This section, upon which defendants rely, provides as follows:

"If a corporation has authorized the sale, lease or exchange of all or substantially all of its assets a shareholder who was a shareholder at the time such action was authorized and who voted against such action may, within 20 days after the date upon which such action was authorized but not thereafter, object thereto in writing and demand from the corporation the payment of the fair cash value of his shares as of the day preceding the day such action was authorized by the shareholders, excluding from such fair cash value any appreciation or depreciation in consequence of the action authorized, and surrender at such time to the corporation the certificate or certificates for his shares as to which he is demanding payment. * * *

"Objection by any such shareholder to any action of the corporation provided in this section and his rights thereafter under this section shall be his exclusive remedy."

The above-quoted §§ 44 and 57 of the General Corporation Act should be considered and construed in connection with §§ 59 and 192 of the act. When so considered, it would appear that in using the term "exclusive remedy" in § 44 the legislature simply meant that a minority stockholder who "voted against" a proposed *good-faith* sale of corporate assets could no longer, as he could in the past, prevent or block the sale against the wishes of a majority of stockholders, and that if he voted against the sale, he could only demand that the corporation purchase his stock and pay to him the fair cash value thereof. Such an interpretation of § 44 would appear to be in harmony with the purpose of this and similar statutes which were enacted to permit a majority of stockholders to authorize a good-faith sale, lease, or exchange of corporate assets and a fundamental change in the corporate structure without victimizing the minority stockholders, and yet at the same time prevent a minority stockholder from establishing a nuisance value for his shares.[4] An interpretation of §§ 44 and 57 to permit the change or destruction of redemption rights or other vested property rights would certainly be in conflict with § 59 of the act, which provides that "The liability of any corporation * * * shall not in any way be lessened or impaired by the sale of any of the assets thereof," and in conflict with § 192 of the act, which provides that "This act shall not impair or affect any * * * right accruing, accrued, or acquired, or liability * * * incurred prior to the time this act takes ef-

---

4. The purpose of such statutes was stated in Voeller v. Neilston Warehouse Co., 311 U.S. 531, 535 (footnote 6), 61 S.Ct. 376, 377, 85 L.Ed. 322, as follows: "At common law, unanimous shareholder consent was a prerequisite to fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted."

fect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act had not been passed." It should be noted that § 192 preserves not only accrued rights, but also the remedies for preserving such rights, for it specifically states that they may be asserted, enforced, and prosecuted as if the act had not been passed. However, the court concludes that in the present case it is not necessary to determine these questions, because the purported sale of the assets of the old company in 1949 was not a good-faith sale as contemplated by §§ 44 and 57 of the act.

▉ The word "sale" as used in §§ 44 and 57 could refer only to a good-faith sale. The court will not ascribe to the legislature, in its use of the word "sale," an intention to include a sham sale or legal subterfuge, the primary and obvious purpose of which is to cut off or impair vested property rights of minority preferred stockholders. This is not to say that a corporation may not, under appropriate circumstances and in good faith, sell its assets to another corporation which has been formed at the instigation of the former. However, where a sale is made in the manner and under the facts and circumstances existing in the present case, it falls far short of the type of good-faith sale contemplated by the statute. It is significant that this purported sale of the assets of the old company to Rowena Mills, Inc., was in pursuance of a reorganization plan initiated by the members of the board of directors of the old company; that the name "Rowena" had been a trade mark and trade name owned and used by the old company for many years; that the only subscriber to the stock of Rowena Mills, Inc., was the old company; that no stock certificates were issued by Rowena Mills, Inc.; that Rowena Mills, Inc., and the new company did not assume the capital-stock liabilities of the old company; that the first board of directors named in the articles of incorporation of Rowena Mills, Inc., was composed of the same five persons who were directors of the old company; that the individual defendants in this case were directors of the old company and immediately became directors of the new company at the time of its organization; that the preferred and common stock of the old company was to be exchanged for stock of the new company on a share-for-share basis; that the business of the old company was in every particular continued without interruption or change in any form or manner; and that in reality the new company became the old company. It is also significant that the notice of the February 7, 1949, meeting of stockholders of the old company, and the accompanying letter from the president, did not disclose or even intimate that the intended purpose of the meeting was to extend the redemption date of the outstanding preferred stock to October 1, 1969, or that action would be taken at the meeting compelling plaintiff and other preferred stockholders either to accept the new preferred redeemable October 1, 1969, or sell their stock to the company for its fair value. It may be noted that the directors of the old company received in exchange for their shares the same number and class of shares in the new company; also that certain of these directors, who were also officers of the company, held large amounts of common stock and had long been in active management of the company at substantial salaries. The old company was apparently not in financial condition to redeem its outstanding preferred stock as agreed on October 1, 1949, and it was obviously to the great advantage of these directors to avoid liquidation and continue the company by deferring the redemption of its preferred stock for another 20 years.

The corporate term of the old company was to expire September 4, 1950, and although the purported reorganization and sale of its assets on February 7, 1949, served to extend its corporate life, it is obvious that the primary and motivating purpose of the sale was to postpone the redemption rights of preferred stockholders. If a mere extension of the corporate term had been the primary purpose, that could easily have been accomplished by the simple procedure provided in § 60 of the act, Comp.Laws 1948, § 450.60, Stat.Ann. § 21.60. This statutory procedure for extension of the

corporate term would have involved no sale of assets, no expense for recording deeds, for stamp taxes, for new stock certificates, and so forth. Furthermore, this procedure would not have deprived the holders of the preferred stock of the old company of their redemption rights, which was clearly the motivating purpose in resorting to the purported sale of assets. In making the sale special attention was given to insuring that the new company did not assume the obligation of the old preferred stock, by providing that the purchasing company assumed all debts and liabilities of the old company *except capital-stock liabilities*. When the purported sale had been accomplished, the name of the purchasing corporation was immediately changed to the name of the old company, and the business of the old company went on as usual. The new company was, in reality, the old company except for one important difference, viz., the redemption rights of preferred stockholders of the old company had been postponed for a 20-year period.

Under all the facts and circumstances shown the court concludes that the purported sale of assets by the old company to the new company in 1949 was not a good-faith sale, but was a sham and an attempted legal subterfuge, the primary and motivating purpose of which was to permit the old company to escape its obligation to redeem its preferred stock on October 1, 1949, and postpone the redemption rights of plaintiff and other preferred stockholders for a period of 20 years. This purported sale of assets, in view of the circumstances under which it was made, was not such a good-faith sale as contemplated by §§ 44 and 57 of the Michigan General Corporation Act and did not divest plaintiff of her vested right to the redemption of her 250 shares of 7% cumulative preferred stock and accrued dividends on October 1, 1949. To hold against the plaintiff in this case would in effect mean that a Michigan corporation could, by the legal subterfuge of a fictitious sale of its assets to itself, cut off the vested and accrued rights of preferred stockholders and violate its contractual obligation to redeem its preferred stock by deferring the redemption date for successive periods.

Upon consideration of the contract provision for redemption appearing on the face of plaintiff's preferred-stock certificate and the relevant provisions of the articles of incorporation and by-laws of the old company, the court concludes there is no merit in defendants' contention that, even if plaintiff is granted recovery in the present suit, she may recover only the par value of her stock without accrued dividends.

Defendants further contend that plaintiff should be denied relief because she is guilty of laches. Their argument would appear to be that plaintiff, through her actions, has lulled the defendants into a feeling of security so that they took action they would not otherwise have taken. Laches is an equitable defense employed in equitable proceedings, whereas the plaintiff in the present case is asserting a legal claim in the nature of assumpsit. Apart from this, the defendants' contention as to laches is not supported by the facts. Plaintiff's stock, by its terms, did not mature until October 1, 1949. She brought suit on October 4, 1949, four days after her redemption rights matured. When she was requested to exchange her cumulative preferred stock in 1936 for new noncumulative preferred, she refused to make the exchange. When she was informed of the proposed sale of assets in 1949, her attorney notified defendants by letter that she was entitled to her redemption rights on October 1, 1949. When, after the purported sale and reorganization, she was asked to exchange her stock for stock of the new company, she did not send in her stock certificate and did not make the exchange. In short, she consented to none of the corporate actions in question but, on the contrary, indicated by her every action that she had no intention of waiving or sacrificing her redemption rights. Under these circumstances it cannot be said that plaintiff lulled defendants into a feeling of security, thereby inducing them to take action they would not otherwise have taken. No facts are shown which would justify the application of the theory of estoppel against plaintiff. The court concludes that plaintiff has not been guilty of laches.

▪ ■ The final question to be determined is whether or not the complaint should be dismissed as to the individual defendants, who were the directors of both the old and new companies. This question was raised by the individual defendants by a motion to dismiss on the ground that the complaint failed to state a claim as to them upon which relief could be granted. At the trial the court ruled that the individual defendants would have the full benefit of the answers filed by the defendant corporations and that the court would dispose of the motion to dismiss in its final opinion. The individual defendants contend that the complaint shows on its face that the corporate actions of which plaintiff complains were taken by authority of and with the approval of the stockholders and not by authority of the directors. The court is of the opinion that this contention is well taken. Under § 43 of the Michigan General Corporation Act, Comp.Laws 1948, § 450.43, Stat.Ann. § 21.43, an amendment of the articles of incorporation may be accomplished only by action of the requisite majority of stockholders and not by the directors. Likewise, under § 57 of the act a sale of assets may be authorized only by the requisite majority of stockholders. The amendment of the articles of incorporation of the old company in 1936 was made in pursuance of § 43 of the General Corporation Act, and the purported sale of assets in 1949 was made in pursuance of § 57 of the act, and such amendment and sale were authorized by the requisite number of stockholders. The complaint specifically alleges that "plaintiff never consented to the action taken by the stockholders on February 7, 1949." Although the preliminary procedural steps in accomplishing these corporate actions were initiated and carried out by the directors, this is usually true of any corporate action. The directors could not and did not authorize the amendment of the articles of incorporation in 1936 or the purported sale of assets in 1949. The corporate actions taken could be authorized only by the requisite majority of stockholders, and were so authorized. The court accordingly concludes that the motion of the individual defendants to dismiss the complaint as to them should be granted.

For the reasons stated herein the court further concludes that plaintiff is legally entitled to recover from the defendant corporations the sum of $7,309.44. This amount is computed as follows:

Par value of plaintiff's 250 shares of 7% cumulative preferred stock issued April 20, 1923..... $2,500.00

Accrued dividends on said stock from October 1, 1923, to the specified redemption date of October 1, 1949..... $4,550.00

Dividends paid for two quarters in 1927 and three quarters in 1928     218.75

$4,331.25     4,331.25

Total due plaintiff on October 1, 1949 ..................... $6,831.25

Interest at 7% from October 1, 1949, to September 30, 1950 [5]...     478.19

Amount due plaintiff on the date hereof ..................... $7,309.44

Judgment will be forthwith entered in favor of the plaintiff and against the two defendant corporations, jointly and severally, for the sum of $7,309.44.

The motion of the individual defendants to dismiss the complaint as to them is granted.

As the material facts are stipulated and as the court's findings of fact and conclusions of law are fully set forth in this opinion, it is unnecessary to make separate findings of fact and conclusions of law.

### Appendix A

Minutes of a Special Meeting of the Stockholders of the Valley City Milling Company

Portland, Michigan, Feb. 7, 1949. The special meeting of the stockholders of the Valley City Milling Company was called to order by the President, Fred N. Rowe, in the company's office at Portland, Michigan

---

5. See Affeldt v. Dudley Paper Co., 306 Mich. 39, 48, 10 N.W.2d 299.

at 2:30 P.M. Eastern Standard Time, Monday, February 7, 1949. (List of stockholders). * * *

Total (stock) represented at the meeting 31,487 shares common and 10,859 shares preferred.

The Secretary announced that a quorum was represented.

The following proposal of Rowena Mills, Inc. was then read by Secretary Vermaire:

"The undersigned, Rowena Mills, Inc. (hereinafter referred to as the 'Purchaser'), proposes in accordance with the plan of reorganization heretofore formulated, to purchase all of the property and assets of Valley City Milling Company (hereinafter referred to as the 'Seller'), of every kind and description. ·

"This is to confirm the arrangements with respect to the purchase of the assets by this corporation:

"(1) The seller represents that:

"(a) It is a corporation duly organized and existing under the laws of Michigan with an authorized capital consisting of 50,000 shares of preferred stock of the par value of $10 per share, and 50,000 shares of common stock of the par value of $1 per share, of which 14,600 shares of preferred stock, including stock reserved for issuance, and 34,378 shares of common stock have been duly issued and are now outstanding, fully paid and nonassessable.

"(b) There is no material litigation threatened or pending against the seller.

"(2) The seller agrees forthwith at its expense to:

"(a) Call a meeting of its shareholders of all classes in accordance with its articles of incorporation, its by-laws, and the laws of the State of Michigan, for the purpose of obtaining approval and other appropriate action by its shareholders as required by law of the sale of all of its property and assets in accordance herewith.

"(b) To take such further action as may in the opinion of counsel for the purchaser be necessary to transfer and convey all of its property and assets to the purchaser in accordance herewith.

"(c) Advise the purchaser of the happening of any event which materially affects the seller or its securities or its financial condition.

"(d) Furnish counsel for the purchaser all abstracts of title, bills of sale and other documents relating to the title of seller's property and assets.

"(3) The purchaser represents that:

"(a) Upon consummation of this agreement, it will be a corporation duly organized and existing under the laws of the State of Michigan with an authorized capital consisting of 50,000 shares of common stock of the par value of $1 per share, and 25,000 shares of 6% cumulative sinking fund preferred stock of the par value of $10 per share, none of which has been issued.

"(b) The purchaser has no outstanding options for the purchase of its authorized stock, or other agreements not made in the ordinary course of business, except the subscription by the incorporator for 1,000 shares of common stock, $1 par value, which will be absorbed in the consummation of this agreement.

"(c) There is no material litigation threatened or pending against the purchaser.

"(4) The purchaser agrees at its expense to:

"(a) File its articles of incorporation with the Michigan Corporation and Securities Commission, to pay the franchise and filing fees thereto; said articles of incorporation to be as set forth in the copy of the articles of incorporation attached hereto as Exhibit 'A'.

"(b) Advise the seller of the happening of any event which materially affects the purchaser or its securities.

"(5) Subject to the correctness of the representations contained in paragraphs (1) and (3), and the performance of the matters described in paragraphs (2) and (4), at or prior to the purchase of the property and assets of the seller, and subject to the performance by seller and purchaser of all obligations to be performed at or prior to such purchase, and subject to all other

terms and conditions of this agreement, the purchaser hereby agrees to buy and the seller agrees to sell all of the property and assets, real, personal or mixed, tangible or intangible, and wheresoever situated, including its good will and corporate franchises, subject to all liabilities of the seller and all other liabilities of the seller incurred in the ordinary conduct of its business up to and including the date of conveyance of said property and assets to the purchaser, and in full payment therefor the purchaser agrees to deliver and the seller agrees to accept 14,600 fully paid and nonassessable shares of the 6% cumulative sinking fund preferred stock, $10 par value per share, of the purchaser, and 34,378 shares fully paid and nonassessable shares of the common stock, $1 par value per share, of the purchaser in such denominations and registered in such names as the seller shall have requested in written notice to the purchaser at least seventy-two (72) hours before the time and date of conveyance of seller's property and assets.

"(6) The obligation of the purchaser to purchase the property and assets of the seller, and the obligation of the seller to sell is subject to the following further conditions:

"(a) On or prior to conveyance of the property and assets, counsel for the purchaser shall have furnished to it their written opinion that (i) title to the property and assets to the seller is in satisfactory condition; (ii) that the transaction herein contemplated is a tax-free reorganization under the Federal tax law; (iii) that the corporate proceedings required to be had by this agreement by both purchaser and seller are in accordance with the articles of incorporation and by-laws of both corporations, and according to law, and that such action, when taken, effectually consummates the action contemplated herein; (iv) that upon completion of the transaction the purchaser will have good and sufficient title to the property and assets of the seller, subject to the liabilities as contemplated by this agreement.

"(b) The transfer and conveyance of the property and assets in accordance herewith shall be completed on or before sixty (60) days from the date hereof, unless otherwise agreed between the parties in writing.

"(7) The seller agrees that promptly upon receipt of the shares of stock to be delivered by the purchaser in accordance herewith, that it will distribute the same immediately to its shareholders, so that the holders of its preferred stock shall receive one (1) share of the preferred stock of the purchaser for each share of the preferred stock of the seller held, and the holders of the common stock shall receive one (1) share of the common stock of the purchaser for each share of the common stock of the seller held. It is agreed that the purchaser shall not be required to issue fractional shares in carrying out this agreement, but will issue and deliver stock in such amount and to such extent as may be necessary to protect the holders of the seller's stock who may be entitled to fractions of shares.

"(8) The seller agrees that upon consummation of this agreement, it will terminate its corporate existence as soon as possible, all in the manner approved by counsel.

"(9) This agreement may be amended at any time, either before or after consummation thereof, by mutual agreement between the parties.

"Please confirm at the place indicated below that the foregoing sets forth the agreement between us.

"Very truly yours, Rowena Mills, Inc., by Fred N. Rowe, Jr., Vice President.

"Accepted the above date (January 13, 1949) Valley City Milling Company by Fred N. Rowe, President.

"I, Martin Vermaire, Secretary of Valley City Milling Company, do hereby certify that the attached agreement is a true and correct copy of an agreement dated January 13, 1949, between Valley City Milling Company and Rowena Mills, Inc., setting forth the plan of recapitalization of Valley City Milling Company. Martin Vermaire, Sec'y."

. At the request of the President, Mr. Conrad Thornquist, company counsel, read the following resolution:

"Whereas, on January 13, 1949, Rowena Mills, Inc. submitted to this corporation a

proposal, a copy of which in the form of a letter was presented and read to this meeting, and

"Whereas, at a meeting of the board of directors of this corporation held on the 13th day of January, 1949, it was agreed that the above proposal of Rowena Mills, Inc. be accepted, subject to the consent of the shareholders of this corporation, and

"Whereas, at said last meeting of the board of directors of this corporation it was resolved that a meeting of the shareholders be called to convene at the office of the company, Portland, Michigan, on the 7th day of February, 1949, at 2:30 o'clock, P.M., Eastern Standard Time, to take action on the approval or disapproval of the proposed sale of all of the franchises and all of the property, real, personal and mixed, of this corporation to Rowena Mills, Inc., upon the terms contained in said proposal.

"Now, Therefore, Be It Resolved As Follows That:

"(1) This corporation accept said offer of Rowena Mills, Inc., and sell, assign and transfer and convey to Rowena Mills, Inc. all of the franchises and property, real, personal and mixed, of Valley City Milling Company in consideration of the issuance and delivery to this corporation of 14,600 fully paid and nonassessable shares of Rowena Mills, Inc. 6% sinking fund cumulative preferred stock, $10 par value, and 34,378 fully paid and nonassessable shares of Rowena Mills, Inc. common stock, $1 par value, and that deeds and bills of sale be executed for all of said property, rights and franchises under the corporate seal of this corporation, signed by the President and attested by the Secretary, and acknowledged and delivered to Rowena Mills, Inc.

"(2) The aforesaid sale is to be made under and subject to the assumption and payment by Rowena Mills, Inc. of all the debts and liabilities, except capital stock liabilities, and assumption of all contracts of Valley City Milling Company.

"(3) The officers and directors of this corporation be, and they hereby are, authorized and directed to do all acts and things necessary to carry the foregoing resolutions into effect."

Mr. Donald E. Braendle moved the adoption of the resolution, seconded by Fred N. Rowe, Jr. After a general discussion in which pertinent questions were answered by Mr. Thornquist, the Secretary was asked to call the roll for balloting with the following results:

10,089 shares of preferred stock and 30,378 shares of common stock voted for the resolution.

650 shares of preferred stock and 989 shares of common voted against the resolution.

The Secretary declared the resolution carried.

Those voting against the resolution were as follows:

|  | Shares Pfd | Shares Com |
|---|---|---|
| Curtis M. Wylie | 500 | 500 |
| Carl F. Bockheim, by proxy to Curtis M. Wylie | 50 | 389 |
| Raymond L. & Alexina Hobart by proxy to Curtis M. Wylie | 100 | 100 |
|  | 650 | 989 |

The following resolution was read by Mr. Thornquist:

"Whereas, by vote of the shareholders of this corporation all franchises and property, real, personal and mixed of this corporation, except the consideration received therefor, shall be assigned and vested in Rowena Mills, Inc., and

"Whereas, nothing will remain to be done hereafter, except to distribute the consideration among the shareholders of this corporation, all as set forth in the proposal from Rowena Mills, Inc. to this corporation dated January 13, 1949.

"Now, Therefore, Be It Resolved As Follows That:

"(1) The consideration to be received from the sale of all of the property and assets of this corporation shall be distributed among the shareholders of this corporation as their interests appear and as set forth in the proposal of Rowena Mills, Inc. to this corporation dated January 13, 1949.

"(2) Proper steps be taken by the directors and officers of this corporation to dissolve this corporation in such manner as may be required by law.

"(3) Proper steps be taken by the directors and officers of this corporation to change the name of this corporation for the purpose of permitting Rowena Mills, Inc. to assume the name of this corporation, the franchises and good will of this corporation having been this day vested in Rowena Mills, Inc."

Mr. Robert L. Davis moved the adoption of the resolution, seconded by Martin Vermaire. There being no objections the same ballot was cast as on the previous resolution and the Secretary declared its adoption.

On Motion of Mr. Glenn R. Lawrence, seconded by Wm. Traynick the meeting adjourned at 4 o'clock P. M. Martin Vermaire, Secretary.