AFFELDT v. DUDLEY PAPER CO.

1. CORPORATIONS—REDEMPTION OF PREFERRED STOCK—TIME—STATUTES.

> While statute in effect in 1923 did require that corporation fix date on which it would be obligated to redeem its preferred stock and statute in effect in 1934 did not contain such requirement, the later statute did not preclude the corporation from agreeing to redeem its preferred stock at a specified date (Act No. 84, pt. 2, chap. 2, § 1, Pub. Acts 1921; Act No. 327, § 37, Pub. Acts 1931).

2. SAME—PREFERRED STOCK—REDEMPTION.

> In construing phrase "shall be subject to redemption" found in preferred stock, intent with which it was there used would depend in part upon the conduct of the parties with reference to the stock.

3. CONTRACTS—RECOGNITION BY DEBTOR.

> The express recognition by a debtor of a contractual obligation does not create the obligation but simply confirms the fact that one exists.

4. CORPORATIONS—REDEMPTION OF PREFERRED STOCK.

> Certificate of preferred stock which had been issued by corporation and exchanged by it at its request for similar stock bearing an earlier redemption date because corporation was then unable to redeem it *held*, an obligation of the corporation which the owner might demand that it redeem upon date stated therein where it had been so treated by the parties in efforts to get owner of the certificate to make a second exchange and where there was failure to make provision for plaintiff's stock in amendment of articles renewing corporate term.

5. SAME—PREFERRED STOCK—REDEMPTION PRIVILEGE—AMBIGUITIES.

> Phrase "shall be subject to redemption" at time specified in preferred stock, if ambiguous, is resolved in favor of the

stockholder since the language in question was adopted by the corporation for its benefit, redemption privileges being usually inserted in stock certificates as a means of securing capital from those desiring a more certain investment without the speculative features of common stock.

6. SAME—PREFERRED STOCK—RETIREMENT—APPROVAL—CREDITORS.

Retirement of 7 per cent. cumulative preferred stock subject to redemption at par shortly before term of corporate existence expired and payment of accumulated dividends thereon was properly decreed by trial court at suit of certificate owner where obligation became fixed before meeting was held to renew the corporate charter and provide for 5 per cent. noncumulative preferred stock, there was no approval of such amendment by the different classes of stockholders affected as required by statute, and sum decreed will not prejudice rights of creditors or impair means of meeting any paramount obligations (Act No. 327, § 43, Pub. Acts 1931, as amended by Act No. 194, Pub. Acts 1935).

7. SAME—COURTS—DISCRETION OF DIRECTORS—STOCKHOLDERS—DIVIDENDS—EQUITY.

While a court is unwilling to impose its judgment upon the directors of a corporation and interfere with the exercise of their discretion, if the directors refuse to declare a dividend in the hope of compelling a stockholder to abandon his contract, the latter may have his remedy in equity.

8. SAME—ACCUMULATED DIVIDENDS ON PREFERRED STOCK—DECREE ORDERING PAYMENT.

Decree ordering trial court to pay accumulated dividends to preferred stockholder whose stock had been issued by corporation and was subject to redemption at par before amendment of articles renewing corporate existence was proper where corporation had paid one dividend to holders of new preferred stock and was prepared to pay an additional dividend thereon for the current year, since it was its duty to take care of the old preferred stockholders first.

9. SAME—PREFERRED STOCK—RATE OF DIVIDEND AFTER MATURITY.

Cumulative preferred stock upon which no dividend was paid after its issuance and which was subject to redemption at par on a given date was an obligation which bore the certificate rate of dividend as well after maturity as before.

10. INTEREST—RATE—MATURITY.

Interest at the contract rate is allowed after as well as before, maturity.

11. INJUNCTION—AFFIRMANCE OF DECREE REQUIRING PAYMENT OF DIVIDENDS BY CORPORATION.

Upon affirmance of decree ordering corporation to retire old cumulative preferred stock and pay accumulated dividends thereon, where corporation appears to be well able to make payment, the propriety of issuance of injunction restraining declaration of dividends on new preferred stock becomes moot as affirmation of such decree requires immediate payment and the injunction then ceases to be of any force.

12. COSTS—ASSESSMENT.

Assessment of costs examined and found without error.

Appeal from Ingham; Carr (Leland W.), J. Submitted January 13, 1943. (Docket No. 65, Calendar No. 42,139.) Decided June 30, 1943.

Bill by Ferdinand G. Affeldt against Dudley Paper Company, a Michigan Corporation, and its officers and directors to compel redemption of stock and payment of dividends thereon. Judgment for plaintiff. Defendants appeal. Affirmed.

*Kelley, Eger & Kelley,* for plaintiff.

*Carl H. Reynolds (Pierce, Planck & Ramsey,* of counsel), for defendants.

BUTZEL, J. Plaintiff, the owner of 100 shares of the preferred stock of defendant Dudley Paper Company, filed a bill asking that defendants be ordered to pay him $1,000, the par value of his shares plus cumulative dividends at the rate of 7 per cent. per annum from September 1, 1934. Prior to the year 1931, plaintiff had become the owner of 100 shares of preferred stock. These shares were authorized by an amendment to the articles of association which provided that "the preferred stock shall be subject to redemption at par on the 15th day of April, 1935,"

et cetera, and at a premium at any time after April 15, 1916, and before April 15, 1935. During the year 1934, at the request of the officers of the corporation and upon their representation that the company would be financially unable to redeem the preferred stock on April 15, 1935, plaintiff exchanged his certificate for one dated September 1, 1934, for 100 shares of preferred stock of the par value of $10 a share. The certificate contained the following recitals:

"This stock is subject to redemption at par on April 15, 1940, and at 5 per cent. above par at any time after November 17, 1930, and before April 15, 1940."

"The holder of this certificate shall be entitled to a dividend of 7 per cent. per annum, payable quarterly on the first days of January, April, July and October in each year, which dividend shall be cumulative and payable before any dividend shall be set apart or paid on the common stock."

While the exact date of the expiration of the corporate charter is not given, it was in the very early part of 1941, so that April 15, 1940, the date of redemption at par set forth in the certificate, was but shortly prior to the expiration of the corporate charter.

At the end of 1937, or soon thereafter, the officers of the corporation made an effort to exchange the 7 per cent. cumulative preferred stock for 5 per cent. noncumulative preferred stock. A meeting of the common stockholders was held for that purpose, and application was made to the corporation and securities commission for authority to issue such 5 per cent. noncumulative stock, the purpose of the issuance of said stock being stated in the application as follows:

"The proposed issue is not to be sold but is to be exchanged, share for share for the outstanding certificates of preferred, already issued by the company."

Plaintiff refused to make the exchange. He claims that he never received notice of any meeting of preferred stockholders in which the question of the issuance of the 5 per cent. stock and its exchange for the then outstanding stock was presented. Defendants concede that no proper legal action was taken at the time that would bind plaintiff so we need not discuss this phase of the case. As a matter of fact 4,578 shares of the 7 per cent. cumulative preferred stock were exchanged for 5 per cent. noncumulative stock, but 340 shares of the 7 per cent. preferred stock were not exchanged. The holders of the 340 shares, with the exception of plaintiff holding 100 shares, accepted the 5 per cent. dividend that was subsequently declared on the 5 per cent. noncumulative preferred stock. Plaintiff did not accept such 5 per cent. dividend and has received no dividends on his stock since December 1, 1934.

On January 25, 1941, a stockholders' meeting was held to extend the corporate existence and to provide for a certain number of shares of common stock and 5,000 shares of 5 per cent. noncumulative preferred stock. An amendment to the articles was filed with the corporation and securities commission on April 17, 1941, which amendment in stating the amount of outstanding stock made no reference whatsoever to the 7 per cent. cumulative preferred stock theretofore issued.

The principal question in the case is whether the statement in the amendment to the articles and in plaintiff's stock certificate that the stock shall be "subject to redemption at par on April 15, 1940,"

made it optional or obligatory on the part of the corporation to redeem on April 15, 1940. In seeking to ascertain the intent of the contracting parties we have considered the several statutes in effect since defendant corporation was organized, but find them of little assistance.

Counsel for defendant concede that the statute (Act No. 84, pt. 2, chap. 2, § 1, Pub. Acts 1921) in force at the time plaintiff's certificate was authorized (1923) required the corporation to fix a date on which it would be obligated to redeem its preferred stock, but they contend that because the certificate which is the subject of suit was issued after Act No. 327, § 37, Pub. Acts 1931 (Comp. Laws Supp. 1933, § 10135-37), became effective, they are not bound by the earlier statute. Section 37, *supra,* provides that a corporation may redeem preferred shares, if subject to redemption, but there is nothing in the statute which precludes a corporation from agreeing to redeem its preferred stock at a specified date. To read such a prohibition into the statute would be to prevent a corporation from strengthening its capital structure by the sale of stock to those investors interested only in the security of preferred stock with the knowledge that it will be redeemed at a time certain. Whether the parties have contracted to redeem must, therefore, depend upon what they intended by the words "shall be subject to redemption," and what they intended must depend in part upon their conduct with reference to the stock.

In this respect defendant claims that the purpose of the recital in its certificate was to compel plaintiff to surrender his stock when the corporation exercised its option to redeem. To sustain this interpretation, it would be necessary to find that defendant requested plaintiff to exchange his first

certificate not because the stock matured in 1935, but because the defendant was then unable to take up its option, the new issue merely extending the period during which the privilege could be exercised. Evidently, however, the corporation believed that it was obligatory on its part to redeem the stock for in an agreement which it circulated among the stockholders to authorize the exchange of the 7 per cent. cumulative stock for 5 per cent. noncumulative stock, it referred to stock which matured in 1935 and to stock maturing in 1940. The language of this agreement lends support to the averment of the bill of complaint that plaintiff was asked to surrender the first certificate merely to extend the date of maturity. The only substantial difference between the two certificates was that the later one was subject to redemption on April 15, 1940. By otherwise subjecting the new certificate to the same incidents, it is a fair inference that the parties regarded the exchange as fixing a later date on which the corporation would be required to redeem. The effect of the reference in the agreement to stock maturing in 1940 is not to work an estoppel, but to disclose that the corporation from the very outset believed itself obligated to redeem and led plaintiff to believe his stock would be redeemed. The express recognition by a debtor of a contractual obligation does not create the obligation but simply confirms the fact that one exists. By requesting plaintiff to exchange stock maturing in 1940, defendant corporation understood that if an exchange was not effected, it would be obliged to retire the stock. In this connection we cannot ignore the fact that the amendment to the articles renewing the corporate term, in stating the amount of outstanding stock, made no reference to any stock held by plaintiff. It simply renewed the new 5 per cent. preferred stock,

none of which plaintiff held. Since defendant's officers were under a duty to disclose all outstanding stock to the corporation and securities commission, their failure to report the 100 shares of 7 per cent. cumulative preferred stock held by plaintiff indicates that they considered such stock as no longer existing. If the defendant's theory is correct, it could again renew its corporate charter, make no provision in regard to preferred stock carrying a dividend of 7 per cent. and prevent a preferred stockholder from collecting the principal during the period of renewal or renewals of its term.

Moreover, these various possibilities of interpretation suggest that the phrase "subject to redemption," standing by itself, is ambiguous. In *Vanden Bosch* v. *Michigan Trust Co.* (C. C. A.), 35 Fed. (2d) 643, in discussing the phrase as it appeared in Act No. 187, Pub. Acts 1893, the court said:

"This phrase, 'shall be subject to redemption,' at the time fixed may have been optional or obligatory —a privilege or duty. It may be inferred that controversies arose on this point."

Redemption privileges are usually inserted in stock certificates as a means of securing capital from those who desire a more certain investment without the speculative features of common stock. *Sutton* v. *Globe Knitting Works,* 276 Mich. 200 (105 A. L. R. 1447); *Koeppler* v. *Crocker Chair Co.,* 200 Wis. 476 (228 N. W. 130). Since the language in question was adopted by the corporation for its benefit, any ambiguities should be resolved in favor of the stockholder. We therefore hold that in view of the history of the stock, defendant's efforts to secure an extension of time, and the failure to make any provision for the 7 per cent. preferred stock in the amendment renewing the corporate term, de-

fendant recognized plaintiff's right to demand redemption as of April 15, 1940.

Defendant's obligation became fixed prior to the time the meeting was held to renew the corporate charter and to provide for 5 per cent. noncumulative preferred stock. We, therefore, need not discuss other questions that might arise under different circumstances in regard to the right of the corporation or its stockholders to change the provisions of preferred stock and take away the accrued rights of the holders thereof. See *Sutton* v. *Globe Knitting Works, supra,* and *Vanden Bosch* v. *Michigan Trust Co., supra.* It might be said here, however, that at the time of the 1941 meeting, the corporation had outstanding common stock, 5 per cent. noncumulative preferred stock, 240 shares of 7 per cent. preferred stock, the holders of which accepted the 5 per cent. dividend, and the 100 shares of cumulative 7 per cent. preferred stock held by plaintiff. Thus there were a number of classes of preferred stock outstanding. There is no claim by defendant that at any meeting were there any amendments approved by the holders of a majority of the shares of the stock held by plaintiff or by the various classes of stockholders as provided by Act No. 327, § 43, Pub. Acts 1931, as amended by Act No. 194, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 10135–43, Stat. Ann. § 21.43). Nor does defendant claim that the retirement of plaintiff's stock and the payment of accumulated dividends, as decreed by the trial court, will prejudice the rights of creditors. The financial statement of the corporation indicates its ability to make payment without impairing its means of meeting any paramount obligations.

The more serious question is whether it was proper for the trial court to compel the payment of accumulated dividends. While it is true that

a court is unwilling to impose its judgment upon the directors of a corporation and interfere with the exercise of their sound discretion, if the directors refuse to declare a dividend in the hope of compelling a stockholder to abandon his contract, the latter may have his remedy in equity. See *Knight* v. *Alamo Manfg. Co.*, 190 Mich. 223 (6 A. L. R. 789). The defendant corporation had already paid a 5 per cent. dividend on the outstanding 5 per cent. noncumulative preferred stock and was prepared to pay an additional 5 per cent. dividend for the current year. As was stated in *Vanden Bosch* v. *Michigan Trust Co., supra,* all who accepted the new preferred stock did so with the understanding that the old holders must be paid to the extent they would not accept the substitution. Inasmuch as the corporation conceded its ability to pay dividends to the new preferred stockholders, it was its duty to take care of the old preferred stockholders first. See *Wiedersum* v. *Atlantic Cement Products Co.,* 261 App. Div. 305 (25 N. Y. Supp. [2d] 496).

A question is raised as to whether the obligation should continue to pay the certificate rate of 7 per cent. after maturity. Counsel have been unable to find any authority on this subject. In *Warner* v. *Juif,* 38 Mich. 662, we said:

"We are aware of the difference of judicial opinion which appears in regard to this general subject, but we think the matter is settled in this State in favor of allowing interest at the rate * * * prescribed by the contract as well after maturity as before. Such has been the invariable construction here, not only by the profession, but by all others, and we are not disposed to question its propriety."

Defendants further object to the fact that there was an injunction restraining the declaration of a dividend of 5 per cent. on the new preferred stock.

As stated in the brief, ''The company had at the time of the trial current assets with a value approximately three times the amount of its current liabilities;'' also that its net worth was over 100 times the amount in litigation.   It further stated that collection of the amounts due plaintiff was such a simple matter that the issuance of an injunction was entirely improper.   The question of the propriety of issuing an injunction becomes moot.   The affirmation of the decree requires its immediate payment.   The injunction then ceases to be of any force or effect.

Defendants claim that the costs were improperly assessed.  We have checked them and find no error.

The decree of the trial court is affirmed, with costs to plaintiff.

CHANDLER, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.  BOYLES, C. J., and NORTH, J., concurred in the result.