## CITY OF MOUNT PLEASANT *v.* PUBLIC SERVICE COMMISSION.

1. Prohibition—Mandamus—Public Service Commission—Questions Reviewable.

    Only issues of law may be reviewed by the Supreme Court on a petition for writs of prohibition or mandamus against the public service commission.

2. Gas—Rates—Evidence—Vacation of Restraining Order.

    The reception in a rate-fixing proceeding before the public service commission of evidence as to cost of service by supplier of natural gas to inhabitants of plaintiff municipality on a system-wide basis was not unlawful prior to circuit court's vacation of its restraining order against imposition of rates on such basis but nearly 2 months after Supreme Court had directed the circuit court to vacate its restraining order forthwith as the court's delay was not caused by the supplier and did not prejudice the plaintiff.

3. Public Service Commissions—Rates—Franchises.

    The public service commission has no authority to fix rates or charges fixed in, or regulated by, any franchise or agreement granted or made by any city, village or township (CL 1948, § 460.54).

4. Gas—Public Service Commissions—Rates—System-Wide Costs.

    City's franchise to supplier of natural gas for use by city's inhabitants that provided for fixing of rates by mutual consent of the parties, a procedure which, if ineffective, was followed by conferral of jurisdiction upon the State public service commission to fix and establish just and reasonable rates, did not prohibit the commission from considering costs of furnishing natural gas on a district basis.

References for Points in Headnotes

[1] 2 Am Jur, Appeal and Error §§ 125, 129; 3 Am Jur, Appeal and Error § 863; 34 Am Jur, Mandamus §§ 42–44; 42 Am Jur, Prohibition, §§ 18–21.
[2] 43 Am Jur, Public Utilities and Services § 105 *et seq.*
[3, 4] 43 Am Jur, Public Utilities and Services § 194.
[5, 7, 8] 43 Am Jur, Public Utilities and Services § 87 *et seq.*
[6] 43 Am Jur, Public Utilities and Services § 201 *et seq.*
[9] 43 Am Jur, Public Utilities and Services § 224 *et seq.*
[10] 43 Am Jur, Public Utilities and Services §§ 194, 195.
[11] 43 Am Jur, Public Utilities and Services § 218 *et seq.*
[12] 43 Am Jur, Public Utilities and Services § 229.
[13] 14 Am Jur, Costs §§ 11, 37, 91.

5. Same—Construction of Franchise—Oral Evidence.

The franchise which had been given gas supplier's assignor and which was clear and unambiguous in its terms did not require presentation of oral proof to determine the rights of the parties thereunder, hence, the public service commission's holding that oral testimony given by city was unnecessary was not error.

6. Same—Rates—Public Service Commission.

The public service commission was not in error in determining that rates to consumers of natural gas within plaintiff city should be established on a district basis after matter of rates had come to the commission following an effort on the part of the supplier to obtain an adjustment of rates on such basis by consent of the plaintiff, as the commission was given the right to fix and establish reasonable rates by the city's franchise when the parties thereto were unable to agree and could consider the question both from a local and district basis.

7. Same—Rates for Natural Gas—Gas-Manufacturing Facilities.

The rates to be charged users of natural gas in plaintiff city which had granted a franchise to the present supplier's assignor, containing a clause permitting construction of a plant to supply other users but only so long as it would in no way affect the maintenance of a sufficient pressure of gas for use of the inhabitants of the city, should not contain items of cost for capital investment or operational expense of gas-manufacturing facilities, where testimony shows there is little reason to anticipate an emergency natural gas shortage for plaintiff in the future and the facilities were not located within the city.

8. Same—Franchise—Special Industrial Large Volume Rate for Interruptible Service.

The terms of city's franchise to supplier of natural gas were not violated by virtue of establishment by the public service commission of a special industrial large volume rate to users who can arrange their facilities to use an interruptible gas service at a lower rate, where no one was compelled to use such service and the gas supply was available when firm customers' demands were substantially less.

9. Prohibition—Questions Reviewable—Gas Rates—B.T.U. Content at Wellhead.

Claim that public service commission committed error by failing to mention any application of section of city's franchise

relative to B.T.U. content of natural gas at the wellhead is not sustained on city's petition for writs of prohibition or mandamus to test validity of new gas rate schedules, where city did not seek to obtain information on such matter at hearing on gas rates.

10. GAS—RATES—FRANCHISES—PUBLIC SERVICE COMMISSION.

The failure of the public service commission to include in its order, fixing and establishing rates for natural gas within plaintiff city, a provision to the effect that service under the schedule of rates therein was subject to the city's franchise ordinance, may not be considered as evidence of an intention of the commission to encroach upon the franchise rights of the city.

11. PROHIBITION—MANDAMUS—RECORD—FAIR HEARING—GAS RATES —MUNICIPAL CORPORATIONS.

Claim of plaintiff city that it had not had a fair hearing before the public service commission at hearing on rates to be charged for natural gas supplied to users under its franchise *held*, not sustained by the record presented in proceeding to obtain writs of prohibition or mandamus.

12. SAME — MANDAMUS — QUESTIONS REVIEWABLE — REASONABLE-NESS OF RATES FOR NATURAL GAS.

The reasonableness of rates for natural gas, as fixed by the public service commission, involves a question of fact and is not properly before the Supreme Court on city's original petition therein for writs of prohibition or mandamus.

13. COSTS — PROHIBITION — MANDAMUS — PUBLIC QUESTION — FAIL-URE OF EITHER PARTY TO PREVAIL.

No costs are allowed in original proceeding in Supreme Court for writs of prohibition or mandamus to test validity of new gas rate schedules, where neither party has prevailed in full and a public question is involved.

Petition by City of Mount Pleasant, a municipal corporation, for writs of prohibition or mandamus directed to Public Service Commission testing validity of new gas rate schedules. Michigan Consolidated Gas Company, a corporation, intervenes as party defendant. Submitted January 4, 1955. (Calendar No. 46,228.) Matter remanded to commission April 14, 1955, for the purpose of making corrections in rate schedule.

*Barney Wendrow,* Special Counsel, and *Edward N. Lynch,* City Attorney, for plaintiff.

*Dyer, Angell & Meek* and *James W. Williams,* for intervening defendant.

Kelly, J. The Michigan public service commission on April 9, 1954, granted the petition of Michigan Consolidated Gas Company and ordered a revision of gas rates in the city of Mt. Pleasant.

The city of Mt. Pleasant filed a petition for writs of prohibition or mandamus and an order to show cause was directed by this Court to the Michigan public service commission. The nature of the remedy sought confines this review solely to issues of law and plaintiff agrees with statements in the memorandum of the attorney general that:

"The plaintiff's basic claim, asserted throughout its petition, rests upon 'a valid and subsisting franchise contract' between the city and Consolidated" * * * and involves "issues of law which arise out of the terms and conditions of the franchise contract between them."

The 30-year franchise in question was issued in 1931 to Gas Corporation of Michigan. In 1942, Gas Corporation assigned this franchise to defendant Michigan Consolidated Gas Company.

The 1931 franchise established the rates for gas service for 3 years with the further provision that subsequent rates to be determined upon mutual consent, and if the parties were unable to agree upon a revision of rates "either party * * * may apply to the Michigan public utilities commission (to whom jurisdiction to fix and alter rates in said city is hereby granted and conferred) to fix and establish rates, in which case the rates so fixed, if just and reasonable, shall prevail."

The Michigan public service commission ordered revision of rates in 1935 and 1936, and the 1936 rate was in effect until the order of the commission (April 9, 1954) reviewed in this proceeding.

The parties to this proceeding have on 2 previous occasions brought their dispute *in re* gas rates in the city of Mt. Pleasant before this Court.

In 1948, Michigan Consolidated applied to the commission for a gas-rate revision without prior negotiations with the city. The city of Mt. Pleasant brought suit in equity in the Isabella circuit court to enjoin the company from proceeding with its application to the commission, alleging:

(1) That the specific provisions of the franchise did not allow the jurisdiction of the commission to be invoked unless and until good-faith attempts had been made to reach an agreement between defendant and plaintiff city with reference to the rates to be charged by defendant within the municipality and that defendant had not made any effort to obtain such an agreement.

(2) That in the 1948 proceedings before the commission defendant sought to have the new schedule of rates determined on the basis of costs for the furnishing of gas on a district basis rather than a local basis in violation of the terms of the franchise; and that defendant was about to discontinue the the furnishing of gas to certain central heating and industrial users within the city in disregard of its contractual obligation.

Following hearing on the merits before the circuit court a decree was entered embodying the principal relief sought by the plaintiff and restraining the defendant from indulging in the conduct of which plaintiff complained and from such decree defendant company appealed.

Justice CARR's opinion for this Court (September 8, 1949) is reported in *City of Mt. Pleasant* v.

*Michigan Consolidated Gas Co.,* 325 Mich 501 (81 PUR NS 589). We sustained the injunction on the grounds that the franchise required negotiations between the parties for a revision of rates before either could make application to the commission.

In regard to the second point, that the rates to be determined by the commission should be based on a local basis rather than a district basis, we said (pp 519, 520):

"Obviously it was the position of the defendant that it should be permitted to base its schedules of rates in all of the communities referred to on costs of service throughout the entire district, rather than being required to treat each community separately. Plaintiffs urge that such course may not be followed, as to Mt. Pleasant, without violating the 1931 franchise. The trial court upheld such contention and enjoined the defendant, in any rate application that it might make to the commission in the future to fix rates applicable in the city of Mt. Pleasant during the life of the franchise, from including Mt. Pleasant in the contemplated district, and, also from including costs of manufactured gas, or capital investment in artificial gas plants, as a basis for any increase in rates in said city.

"Defendant contends that the decree should be modified in this respect, insisting that when and if the matter finally comes before the commission for determination, it should be entitled to ask that its rates within the plaintiff city be based on the cost of service throughout the district that it seeks to establish, including other communities as well as the city of Mt. Pleasant, and that necessary costs of producing artificial gas be considered. It is further claimed that the matter is primarily one for determination by the commission when its jurisdiction is invoked, and that the court should not undertake, by injunction, to direct, control, or limit the procedure of the commission in advance of action thereby. Defendant's position in this respect is, we think,

well taken. It may be assumed that if the parties are unable to reach an agreement with reference to changes in the rates to be charged by defendant within the city of Mt. Pleasant, and in consequence defendant thereafter invokes action by the public service commission, the proceedings before that body will be conducted in accordance with the statutory procedure, and with due recognition of the contractual rights of the parties."

After several months of unsuccessful negotiation between the company and the city endeavoring to agree on a gas rate, the company on August 6, 1952 (approximately 3 years after the above-mentioned Supreme Court opinion), made its second application to the commission for a revision of rates. Once more chancery proceedings were instituted by the city in the Isabella circuit court seeking a restraining order because the company was seeking a rate based upon its system-wide costs rather than on basis of costs and investments in the franchise area. The circuit court issued the restraining order and this Court reviewed that order in 1953 in *Michigan Consolidated Gas Co.* v. *Isabella Circuit Judge,* 337 Mich 188 (100 PUR NS 504). After deciding that negotiations endeavoring to fix rates on a system-wide cost of service constituted good-faith negotiations, this Court on June 22, 1953, directed the circuit court to forthwith vacate the restraining order, stating:

"Neither the circuit court nor the intervenor city should in anywise interfere with the gas company's presentation of the matters in the later petition by the gas company, before the commission."

Testimony in support of defendant's application for rate revision on the matter now before this Court was introduced by the defendant company on August 19, 1953. The hearings concluded on December

4, 1953, and the commission entered its opinion and order on April 9, 1954.

The forthwith order of June 22, 1953, of this Court was followed by this Court's denial on August 4th of the city's application for rehearing. The circuit judge failed to vacate the restraining order until October 6, 1953.

Plaintiff contends that because the Isabella circuit court had failed to comply with this Court's direction to vacate the restraining order on August 19, 1953, when the commission took proof in regard to defendant's application, that therefore said evidence and proof were unlawfully received and any order or opinion based thereon was null and void. We cannot agree with such a contention. The court's delay was not caused by the defendant and did not prejudice the city. Plaintiff cites no authority to sustain its contention in this regard and decisions of this Court support a contrary view. See *Geddis* v. *Wayne Circuit Judge,* 151 Mich 122; *Hulan* v. *Wayne Circuit Judge,* 159 Mich 605; and *Affeldt* v. *Dudley Paper Co.,* 306 Mich 39.

The city and the company agree that the commission had authority to fix gas rates for Mt. Pleasant users. They disagree as to the extent of the commission's authority. The city claims said authority is limited by the various provisions of the franchise.

The company does not agree with city's contention and claim that the jurisdiction and authority of the commission is based:

1. On the statute giving the commission general jurisdiction to fix rates for gas utilities, subject only to the qualification that where there is a franchise the parties must consent that the commission so act.

2. Upon the provision that the statute imposes no limitation on the scope of the commission's authority and therefore does not authorize the parties to im-

pose limitations on said authority after invoking commission action.

3. On the provision that if the parties see fit to accept the commission's jurisdiction, they accept it as fixed in the statute, as the statute gives the parties no right to add to it or detract from it.

PA 1919, No 419, § 4, as amended (CL 1948, § 460.-54 [Stat Ann § 22.4]), provides:

"In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by, any franchise or agreement heretofore or hereafter granted or made by any city, village or township."

In *City of Detroit* v. *Public Utilities Commission,* 288 Mich 267, 276 (29 PUR NS 203), this Court said:

"If there is a valid agreement or franchise granted or made by the city, fixing or regulating rates or charges, the commission has no power to change or alter them, as rates fixed by agreement are not subject to control of the commission. *Lenawee County Gas & Electric Co.* v. *City of Adrian,* 209 Mich 52 (10 ALR 1328)."

The franchise provisions prevail and control in this case and the fact that the commission proceeded on this theory we believe is disclosed by the following statement in the commission's opinion and order:

"But for the provisions of the franchise, the commission would have full jurisdiction over rates for natural gas within Mt. Plesant. PA 1919, No 419, § 4 (CL 1948, § 460.54 [Stat Ann § 22.4]); PA 1939, No 3, § 6, as amended (CLS 1952, § 460.6 [Stat Ann 1953 Cum Supp § 22.13(6)]). Rates within Mt. Pleasant are exempt so long as the franchise provisions are effective to fix them. * * * In the instant matter the parties have been unable in 'good faith' to negotiate new rates and the matter has been

properly submitted to us under the statute and the franchise for decision."

Plaintiff claims that an examination of franchise sections 7, 8, 9, 10, 11, 12, 13, 14, 17, 18 and 19 discloses a franchise that requires parol evidence to determine the intent of the original contracting parties. Section 7 provides:

"The rates specified in this franchise shall remain in force throughout the term of this franchise, subject to the following provisions: At the end of 3 years and at any time thereafter from and after the date of this franchise, said rates with the mutual consent of said grantee, successors and assigns, and the city commission of the city of Mount Pleasant, Michigan, or its successors, may be reviewed, altered, and changed.

"In the event that said grantee, its successors and assigns, and the city commission of Mount Pleasant, Michigan, or its successors cannot agree to an altered or changed rate then either party, namely said grantee, its successors or assigns or the city of Mount Pleasant, Michigan, acting by its duly authorized representatives, may apply to the Michigan public utilities commission (to whom jurisdiction to fix and alter gas rates in said city is hereby granted and conferred) to fix and establish rates in which case the rates so fixed, if just and reasonable, shall prevail."

Section 8 is as follows:

"In the event said grantee, its successors and assigns, or any other person or corporation through the extraction of gasoline or any other product or by-product from the natural gas furnished under this ordinance, reduces the B.T.U. content of said natural gas as it comes from the well, by an amount in excess of 50 B.T.U. (British thermal units per cu. ft.) then the rates charged by said grantee, its successors or assigns, for such gas shall be reduced proportionately."

Section 9 establishes the following provision:

"In no event shall the rates charged by the grantee, its successors or assigns, for gas furnished to the inhabitants of said city, exceed the rates charged by said grantee, its successors or assigns, for like service in any other city or community in which the grantee, its successors and assigns, may furnish gas, within a distance of 30 miles from the corporate limits of said city of Mount Pleasant, Michigan."

Section 10 claimed by plaintiff to be very important is as follows:

"Said grantee, its successors and assigns, shall bring or shall cause to be brought natural gas to the corporate limits of said city, and on or before September 1, 1931, shall be furnishing natural gas to the inhabitants of said city in substantial compliance with the terms and provisions of this ordinance. Time is deemed to be the essence of this grant and the failure of said grantee, its successors and assigns, to procure and distribute natural gas to the inhabitants of said city within the time above stated, shall at the option of said city commission, work a forfeiture of this entire franchise. Should natural gas be procured and distributed in said city within the time above stated and at some future date, due to the exhaustion or depletion of the supply of natural gas, said grantee, its successors or assigns, are unable to procure and distribute same and are able to convince said city commission or its successors that such failure is not due to the neglect or default of said grantee, its successors or assigns, then said grantee, its successors or assigns, at the option of said city commission or its successors, may be allowed to change over and substitute artificial gas, or a mixture of artificial and natural gas, and furnish same to the inhabitants of said city. Should such change and substitution be allowed by said city commission or its successors, then the rates to be charged the inhabitants of said city for such artificial

gas or mixture, shall be fixed and established by the mutual agreement of said city commission or its successors and said grantee, its successors or assigns. If said parties cannot agree on a just and reasonable rate, and said franchise has not been declared forfeited by said city commission or its successors, then either party, namely said grantee, its successors or assigns, or said city of Mount Pleasant, Michigan, acting by its duly authorized representatives, may apply to the Michigan public utilities commission (to whom jurisdiction to fix and alter gas rates in said city is hereby granted and conferred), to fix and establish rates for said artificial gas or mixture of artificial and natural gas, in which case the rates so fixed, if just and reasonable, shall prevail."

Section 11 provides:

"Grantee may charge for natural gas for industrial purposes, such rates as may be mutually agreed upon by the city of Mount Pleasant and said grantee.
"In the event of their inability to agree on such industrial rates, then said rates shall be such as may be fixed by the Michigan public utilities commission, upon the application of either party."

Sections 12, 13, 14, 17, 18 and 19 do not mention rates in any way. Section 12 restricts the city from regulating or controlling the utility in violation of terms of the franchise. Section 13 legally obligates the company to supply the natural gas requirements to the inhabitants of the city of Mt. Pleasant. Section 14 provides that the company is legally bound to faithfully perform all the terms and conditions of the agreement and that such performance shall be in lieu of all license fees and charges which the city might otherwise levy or impose. Section 17 provides for the changing over from artificial to natural gas appliances without charge by the utility. Section 18 sets forth the company's agreement to extend its

lines and mains to serve new customers of gas in Mt. Pleasant and to install services from the main to the curb lines free of charge to the consumer. Section 19 provides that all terms, conditions and requirements of chapter 8 of the city charter apply to the franchise with the same force and effect as though said chapter 8 were specifically set forth in the franchise. The city cites in this regard section 15 of chapter 8 of the city charter providing for the right of inspection to insure proper observance by the company of all conditions imposed by the franchises entered into between the city and utilities.

Plaintiff city states:

"The foregoing sections of the franchise (8, 9, 10, 11, 12, 13, 14, 17, 18, 19) are clear and unambiguous. Each is patently separate and independent of the other; and independent of section 7."

The plaintiff city urges this Court to "consider the legal implications of each section of this franchise, as we contend that the reading of the franchise as a whole implies, as a matter of law, that rates in Mt. Pleasant can only be fixed on a local basis."

Plaintiff cites *Pierson* v. *Davidson*, 252 Mich 319, 325, which states: "Ambiguous and uncertain terms in a contract may always be explained by parol testimony," and *Weber* v. *Wilson,* 240 Mich 462, 464, holding that if the language of a written agreement "is capable of being understood in more than one sense, then it must be construed in the light of the circumstances existing at the time it was signed and delivered."

Plaintiff contends that the testimony of its witnesses Messrs. Ryan, Lyon and Willman clearly shows that it was the intent of the city and the commission at the time the franchise was negotiated that future rates should be based on a local operation

rather than a district or integrated system operation.

The city complains that "neither the intervenor nor the staff cross-examined any one of these witnesses nor did the commission, its staff or intervenor offer any testimony in rebuttal." Plaintiff insists that the commission abused its discretion because it gave no weight or consideration to said testimony.

The commission in its opinion and order refers to this testimony as follows:

"The view urged by Mt. Pleasant is that the franchise requires that rates within the city of Mt. Pleasant be fixed solely upon what is denominated as a 'local investment' basis. The franchise itself is silent on this matter. Mt. Pleasant, however, claims a course of conduct on the part of the original parties leading to the conclusion that they contemplated that rates be fixed on the basis of system operations within Mt. Pleasant. It was natural that until 1942 (date of acquisition by Consolidated) rate making would be on the basis of the system in use when natural gas was first distributed in the city. This was the sole system used for furnishing natural gas in Mt. Pleasant and hence was the only system which could be considered.

"As indicated by the city's own witnesses, however, negotiation on such rates were never fixed on the basis of the company's investment and operation only within Mt. Pleasant. Rather, they were fixed on the basis of the entire system then required to produce, transport and distribute the gas in Mt. Pleasant, including the gas fields, the gathering system, the transmission lines and distribution within Mt. Pleasant, as well as distribution and transmission facilities in Clare and Rosebush, communities entirely separate from Mt. Pleasant, but a part of the integrated system then in use. This is, in our opinion, no support for the city's present legal contention that the franchise requires rates to be fixed on the basis of the operation of property located

solely within the boundaries of Mt. Pleasant. Rather, it supports the view that it was always self-evident that unlike an artificial gas system located wholly within a municipality, a natural gas system, utilizing large scale facilities located outside the municipality to secure and transport its gas, must be considered on the basis of the whole system."

The commission in its opinion and order comments upon the fact that neither party to the franchise in 1931 could contemplate the situation as it exists today where natural gas produced in fields located in Kansas, Texas and Oklahoma would be transported hundreds of miles and distributed to gas users in Mt. Pleasant and states:

"It is impossible now to predict what the parties would have provided, or how they would have acted, if they but could have envisaged the present factual situation and therefore, their previous conduct on the basis of entirely different physical facts, could neither factually nor legally form the basis for reading into the contract terms which do not in fact exist.

"Under such circumstances, the only valid guideposts are the provisions of the contract itself."

The city and the company differ in construing what we said in our opinions in 1949 and 1953 and reported in *City of Mt. Pleasant* v. *Michigan Consolidated Gas Co.* and *Michigan Consolidated Gas Co.* v. *Isabella Circuit Judge, supra.*

Both of these opinions we believe clearly show that this Court was cognizant of the fact that a dispute existed then as now in regard to the inclusion of costs of service to 82 other communities and whether the franchise allowed said costs to be considered in determining cost to users of gas in Mt. Pleasant. In both of these opinions we meant to say and believe did say that the franchise did not prohibit the com-

mission from considering district costs in determining costs to gas users in Mt. Pleasant.

Once more we have given this matter careful consideration.

This Court in *Michigan Chandelier Co.* v. *Morse,* 297 Mich 41, 49, said:

"The question before us is as to the legal effect of the words used in the assignment, rather than a question of construction or interpretation of a contract. The words themselves are not ambiguous or uncertain. We must look for the intent of the parties in the words used in the instrument. This Court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning."

We have called attention previously that plaintiff admits that the sections of the franchise that it relies upon are clear and unambiguous. The commission was correct in its statement, "The franchise itself is silent on this matter."

In regard to the oral proof we cannot agree with plaintiff that the record discloses that the commission failed to give consideration to said testimony but hold in that regard that said oral testimony was not necessary to determine the rights of the parties under the franchise. The commission was correct in its statement that "Under such circumstances, the only valid guideposts are the provisions of the contract itself."

This Court again finds that the franchise gave to the commission the right to determine, fix and establish rates that are just and reasonable and in making said determination could consider the question both from a local and a district basis. We find no error in the commission's determination that a just and reasonable rate for gas users within the city of Mt.

Pleasant should be established upon a district base.

Section 10 of the franchise provides that the gas company can only furnish the city with artificial gas or a mixture of artificial and natural gas after first convincing the city that failure to distribute natural gas is not due to the neglect or default of the company and secondly after so convincing the city obtaining the city's consent. The record discloses that no consent has ever been asked for or obtained by said company since the franchise became operative in 1931. The commission allowed as one of the items of cost the costs of maintaining and operating manufacturing facilities located outside of the city of Mt. Pleasant and plaintiff contends the commission exceeded its authority in including said costs in determining the rate that should be charged for gas in the city of Mt. Pleasant.

Section 13 of the franchise gives to the company the right to extend pipe lines and sell gas to other cities and communities but provides "such sale shall in nowise affect the obligation of the grantee, its successors or assigns, to maintain and furnish sufficient pressure of gas for the use and benefit of the inhabitants of the said city of Mt. Pleasant, Michigan."

In the hearing before the commission the plaintiff introduced city's exhibit No 28 to show that artificial gas is being manufactured by defendant in large amounts with over $13,000,000 capital investment. This exhibit No 28 disclosed the following:

> "Capital Investment .......... $13,690,363
> "Materials and Supplies ........ 1,600,000
> "Operation and Maintenance ..... 1,075,326"

Consolidated owns and operates an integrated gas system serving 7 separate districts. One of these districts, known as the Mt. Pleasant district, consists of the cities of Mt. Pleasant and Clare, the unincor-

porated village of Rosebush and adjacent areas. The others are Detroit, Grand Rapids, Muskegon, Ann Arbor, Greenville-Belding and Big Rapids.

Consolidated purchases most of its natural gas from 2 interstate pipe-line companies, namely, Michigan-Wisconsin Pipe Line Company and Panhandle Eastern Pipe Line Company.

The Panhandle gas is received in the Detroit and Ann Arbor district while the Michigan-Wisconsin gas is delivered to Consolidated at the Austin gas-storage field located in Mecosta county, and various other points in Consolidated system in Michigan.

The city of Mt. Pleasant receives its principal gas supply through lines connecting the Austin storage field and also the Detroit and Ann Arbor districts. It also receives gas from other lines connecting the Austin and the Lincoln-Freeman storage fields.

Mr. Paulin, a company witness, testified:

"There is always gas in this 24-inch line moving either into or out of the Lincoln-Freeman field. Some of the gas is taken from this line by the 4-inch line leading from the vicinity of the Lincoln-Freeman field to the city of Clare. Some of the gas supplied by this line is used in Clare. And, the remainder is transported south to the village of Rosebush and the city of Mt. Pleasant. Thus the city of Mt. Pleasant has 2 sources of gas supply, which insures an adequate gas supply to the residents of Mt. Pleasant in the event of a pipe line failure in either line.

"*Q.* I call your attention to the 4-inch line which leads from the Austin field to the Lincoln-Freeman field and parallels the 24-inch line to which you have just referred. Is this line available for service to the city of Mt. Pleasant?

"*A.* Yes, it is."

Mr. Spindle, in charge of production and pipe lines for the company, testified as follows:

"*A.* We have had adequate supplies for Mt. Pleasant at all times.

"*Q.* That is of natural gas?

"*A.* Yes, sir, of natural gas.

"*Q.* And you still have today; isn't that correct?

"*A.* Yes, sir.

"*Q.* Without the need of the furnishing of any manufactured gas?

"*A.* Yes, sir."

The fact that the city of Mt. Pleasant has very little or no reason to anticipate an emergency natural gas shortage in the future is concurred in by the company in its brief when it states:

"There is another reason why no reference to section 10 was necessary to sustain the action of the commission. Section 10 deals solely with the situation which would exist if the company sought to furnish its customers in Mt. Pleasant with either manufactured gas or mixed natural and artificial gas, 'due to the exhaustion or depletion of the supply of natural gas.' The rates fixed here by the commission do not apply to that sort of situation because that situation does not exist. The company's supply of natural gas is not exhausted or depleted. The company is now serving natural gas to Mt. Pleasant and there is no reason to expect it will do otherwise during the term of the franchise. Consequently section 10 has nothing to do with the present situation."

The company endeavors to justify the commission's inclusion of costs of maintaining the company's gas-manufacturing facilities with the following statement found in its brief to this Court:

"The commission found that it was reasonable to include the costs of maintaining the company's gas-manufacturing facilities in the system-wide costs of service. This was done solely because these facilities are maintained to temporarily insure an ade-

quate supply of gas for the entire system, including Mt. Pleasant, in case of an emergency such as a line break in the supplying pipe lines. It was not done because there was any proposal to furnish manufactured or mixed gas to Mt. Pleasant or that the rates to be fixed were for either mixed or manufactured gas, which is the only situation covered by section 10. The rates fixed in the commission's order are for natural gas service only, even though they do include a small allowance to maintain manufacturing facilities to be used temporarily in case an emergency interrupts or reduces the supply of natural gas."

The commission in its opinion and order states:

"As a part of its integrated natural gas system, Consolidated maintains gas-manufacturing facilities in various cities for use in event of an emergency affecting its natural gas supply. None of these facilities are located in the city of Mt. Pleasant. However, through its transmission system the benefits resulting from the operation of these facilities accrue to all parts of the system, including Mt. Pleasant, to overcome an emergency gas shortage and are not limited to areas in which the manufacturing facilities are located.

"Thus the city of Mt. Pleasant is an integral part of the gas system of Consolidated and, like all other communities in it, receives the benefits thereof."

In 1949, in deciding *City of Mt. Pleasant* v. *Michigan Consolidated Gas Co., supra,* this Court stated (pp 517–519):

"Under the terms of the franchise defendant was obligated to serve new consumers of gas in the city, and, while it had the right under section 13 to extend its pipe lines to other communities and sell and distribute gas therein, it could not, without violating its contract, thereby destroy its ability to perform its undertaking with plaintiff city. In commenting on the situation, the trial court said in part:

" 'The court has heard considerable testimony concerning the reserves of natural gas in the areas supplying the Mt. Pleasant district, and the court believes that counsel for defendant admits that there is sufficient natural gas to supply the needs of the said city for a period of time, at least until the Michigan-Wisconsin pipe line is scheduled to be completed in April of 1950, however, in any event the court finds as a matter of fact that such is the condition. Further the court believes that the defendant sets forth that it intends to supply natural gas and is able to supply natural gas to the said city for all its needs and not to substitute manufactured gas or a mixture of natural and manufactured gas. The purpose of sections 10 and 13 is to secure to the city of Mt. Pleasant an even pressure of natural gas as long as the defendant company is able to furnish the same and permitting the defendant company to extend its lines and mains to service other communities, but only so long as it would in no way affect the maintenance of a sufficient pressure of gas for the use and benefit of the inhabitants of the city of Mt. Pleasant, Michigan, thus insuring to the said city of Mt. Pleasant not only the benefit of natural gas but also sufficient supply to meet the needs of its inhabitants.'

"The record in the case supports the finding of the trial court as to the availability of natural gas to supply the needs of consumers in the plaintiff city. The correctness of such finding does not appear to be directly challenged. Under the circumstances defendant is not entitled, in view of the obligations assumed by it in the acceptance of the franchise, to refuse to continue service to the consumers in question for central heating and industrial uses."

While the record would sustain the commission's decision to include items of cost of maintaining and operating gas-manufacturing facilities when determining cost for other communities in the district other than Mt. Pleasant, said record will not sustain

including such an item in determining cost for Mt. Pleasant. Mt. Pleasant occupies a different position in this regard than the other cities and villages within the district because of a franchise that guarantees to Mt. Pleasant during the life of the franchise a priority upon the supply of natural gas. The commission rates should be revised eliminating therefrom the items of cost included for capital investment or operational expense of gas-manufacturing facilities.

There is a period each year during the spring, summer and fall seasons when there is a diminished need for gas for house-heating purposes. Consequently, during this period, a considerable volume of gas is available for sale in excess of requirements by the customers. To meet this situation, the company asked, and the commission granted in the rate schedules, a special industrial large volume rate. This is generally known as the interruptible service and a lower rate is offered than is provided in the large volume rate schedule which is not subject to interruption. In order to take advantage of this rate, industries must maintain other facilities to use when this gas is not available for them.

Plaintiff complains that the commission violated the terms of the franchise by providing in regard to special industrial large volume rates as follows:

"Gas purchased hereunder shall be used only as a fuel for general commercial and industrial uses; * * * The use of gas under this schedule shall be conditioned on and subject to the requirements of other present and future firm customers of the company and * * * the company may * * * limit, curtail, or discontinue the supply of gas to customers; * * * and, in the sole judgment of the company, * * * the company may immediately curtail or interrupt service hereunder, * * * to the

extent, and for such duration as the company in its sole judgment shall deem necessary."

This rate is properly entitled a *special* industrial large volume rate and no one is compelled to use this service. It is offered to those who can arrange their facilities to use this interruptible gas service at a lower rate. It does not violate the terms of the franchise.

Plaintiff asks this Court to find that the commission erred as a matter of law by completely ignoring any mention of that part of section 8 which provides that if the company "reduces the B.T.U. content of said natural gas as it comes from the well, by an amount in excess of 50 B.T.U. (British thermal units per cu. ft.) then the rates charged by said grantee, its successors or assigns, for such gas shall be reduced proportionately." Plaintiff states that nothing in the company's direct testimony or its exhibits contains any information showing the B.T.U. content of natural gas at the wellhead.

An examination of the record discloses that there is nothing that even tends to show the content of the natural gas at the wellhead or any reduction in the B.T.U. content of the gas furnished in Mt. Pleasant.

Plaintiff did not offer or seek to obtain information on this question at the hearing before the commission and, therefore, this Court will not sustain plaintiff's contention that the commission committed error by failing to mention this application of section 8 of the franchise in its opinion.

Plaintiff calls attention that the commission's order states:

"Rules applicable:
"Service under this schedule shall be subject to the rules and regulations of the company."

Plaintiff insists that this order should also have read and provided that service is "also subject to franchise ordinance No 227 of the city of Mt. Pleasant, Michigan."

We cannot conclude that the public service commission intended to encroach upon the franchise rights of the city, and its failure to include this provision requested by plaintiff shall not be considered as evidence of such intention.

The final 2 reasons offered by plaintiff why a writ of prohibition or mandamus should be granted deal with the question as to whether there was adequate proof to sustain commission's rate increase and as to whether a fair hearing was accorded to the city.

In regard to the question of a fair hearing, we do not believe the record sustains plaintiff's contention that it was denied such a hearing.

After raising the point in its brief in regard to the insufficiency of the proof to sustain a rate increase, plaintiff states: "We are not discussing this point in detail for the reason same involves questions of fact."

In its petition to this Court for a writ of prohibition or mandamus, plaintiff, in paragraph 12, stated as follows:

"Petitioner further avers that the issues raised by this petition are all issues of law, and primarily involve either the interpretation, clarification or confirmation of the opinion of this Court in [*City of Mt. Pleasant* v. *Michigan Consolidated Gas Co.*] 325 Mich 501. That an appeal to the Ingham circuit court would serve no useful purpose, particularly because said gas company previously appealed the decisions of the circuit court in the 2 prior cases involving the same subject matter, and particularly because the issues of law involved herein must finally be determined by this Court in view of the several statements of defendant commission in the

record that if petitioner could not agree with said commission's various rulings on questions of law, it could take an appeal."

Plaintiff in its brief under the title the propriety of the remedy states:

"We appreciate that a writ of mandamus or a writ of prohibition from this Court is a matter of grace or discretion. * * * The issues raised by this petition are all issues of law. * * * The issues of law herein must in any event be finally determined by this Court * * * so that there is an end to this litigation."

The reasonableness of the rates fixed by the commission involves a question of fact and is not properly in issue in this case.

The relief prayed for by plaintiff in its petition and in its brief is denied, with the exception of that requested in paragraph 11 (J) which reads:

"That said opinion and order gives no recognition whatever to the contractual and substantive right of petitioner, pursuant to section 10 of the contract, to include manufactured gas and manufactured gas facilities in computing rates, *only with the express official consent of petitioner.*"

This matter is remanded back to the commission to make corrections in the rate schedule according to the provisions of this opinion. No costs, neither party having fully prevailed and a public question being involved.

Carr, C. J., and Butzel, Sharpe, Boyles, Reid, and Dethmers, JJ., concurred.

Smith, J., took no part in the decision of this case.